## Harry E. Bartram et al. *v.* The Zoning Commission of the City of Bridgeport et al.

Maltbie, C. J., Brown, Jennings, Ells and Dickenson, Js.

Argued June 7—decided August 23, 1949.

*John V. Donnelly,* with whom, on the brief, was *Harry Schwartz,* for the appellant (named defendant).

*Edward J. Lang* appeared for the appellant (defendant Rome).

*Frank L. Wilder,* for the appellees (plaintiffs).

MALTBIE, C. J.   This is an appeal by the defendants from a judgment sustaining an appeal from a decision of the zoning commission of the city of Bridgeport taken in accordance with the provisions of § 845 of the General Statutes.   The commission changed the classification of a Sylvan Avenue lot, with a frontage of 125 feet and a depth of 133 feet, from a residence zone to a business No. 3 zone.

With some corrections to which the defendants are entitled, the controlling facts found by the court are these: Zoning regulations became effective in Bridgeport on June 1, 1926.   They provided for three classes of residence zones, two classes of business zones, and two classes of industrial zones.   In 1937 the regulations were amended to establish business zones No. 3 and special regulations were adopted as to them.   These regulations, as further amended, contain provisions as to the type of construction of buildings and require open yards about them, a setback of thirty feet from the street and parking facilities for cars on private property; the sale of liquors was originally restricted but this provision was amended to forbid sales of liquor under any permit for a tavern, restaurant or all-liquor package store.   The territory surrounding the lot in question is contiguous to the northern boundary of the

city and quite a distance from its shopping and business center. Previous to 1936, both sides of Sylvan Avenue to a depth of 100 feet had for a considerable distance been in a business No. 1 zone, but in that year the classification was changed to residence A; and since that date, as before, a considerable territory in the neighborhood of the premises in question has been in residential zones. When zoning was originally adopted, the area was sparsely built up and contained much farm land. Beginning before 1936, people desiring to get away from the noise and congestion of the center of the city began to build homes there; at present it is quite generally built up with residences, at least 40 per cent of which have been constructed since 1936. Most of the houses in the immediate vicinity of the premises in question are comparatively new; they are neat, one-family homes, with well-kept lawns and attractive plantings; and they give every indication that a self-respecting community of people of moderate means have moved to this outlying section of the city. In the vicinity of the premises in question there exist as nonconforming uses four stores, three selling groceries or meat and one a liquor package store. One of the former is a small store in a building almost opposite the premises in question, the second floor of which is occupied as a residence. There is no drugstore in the vicinity. There is also, near the premises in question, a small church. Sylvan Avenue is a street sixty feet wide and it is a principal traffic artery to and from the section surrounding it.

The application for the change of zone was made by the defendant Rome. He presented to the commission at the hearing before it plans for a building he proposes to erect, which in all respects would comply with the regulations for a business No. 3 zone, which would contain provision for five places of business—— a drug,

a hardware and a grocery store, a bakeshop and a beauty parlor——and which would provide for the parking of cars in the rear of the building, and between it and the street line. Aside from Rome, no one appeared to support his application, but ten residents and property owners in the neighborhood opposed it. They gave various reasons for the position they took, among them these: They desired to have the residential character of the section preserved from business development; in many instances they had purchased or developed their properties in reliance upon the residence zoning of the area and in the expectation that this zoning status would remain unchanged; they were fearful that the business zoning of any portion of the area would be destructive of the peace and quiet they desired to have preserved; they believed that the business zoning of any part of it, however small and wherever located, would have a tendency to break down the residence zoning of the area by making further business zoning in it more likely; and there was no present need for further and more adequate shopping facilities in the neighborhood. A remonstrance against granting the application signed by more than seventy residents in the neighborhood was also filed with the commission; but only some forty-six different addresses of the signers appear on it; in a number of instances the signers were husband and wife or two or more residing in the same house; and many of them lived at a considerable distance from the premises in question. Within a radius no longer than the distance to the addresses given by some of the signers are more than 200 residences.

The commission gave the following reasons for its decision: 1. The location is on Sylvan Avenue, a sixty-foot street, and there is no shopping center within a mile of it. To the north of this tract there is a very

large development but only small nonconforming grocery stores to serve the people. 2. There is practically only one house, adjacent to this tract on the north, which will be directly affected by this change of zone. 3. Business No. 3 regulations, with their thirty-foot setback and liquor restrictions, were designed to meet conditions like this and help alleviate the great congestion in the centralized shopping districts. The court also found that a member of the commission testified that it was its policy to encourage decentralization of business in order to relieve traffic congestion and that, as part of that policy, it was considered desirable to permit neighborhood stores in outlying districts; and nowhere in the record is there any suggestion that this testimony is not true.

The trial court concluded that the change was an instance of "spot zoning." A limitation upon the powers of zoning authorities which has been in effect ever since zoning statutes were made applicable generally to municipalities in the state is that the regulations they adopt must be made "in accordance with a comprehensive plan." Public Acts, 1925, c. 242, § 3 (Rev. 1949, § 837). "A 'comprehensive plan' means 'a general plan to control and direct the use and development of property in a municipality or a large part of it by dividing it into districts according to the present and potential use of the properties.' " *Bishop* v. *Board of Zoning Appeals,* 133 Conn. 614, 618, 53 A. 2d 659; *State ex rel. Spiros* v. *Payne,* 131 Conn. 647, 652, 41 A. 2d 908. Action by a zoning authority which gives to a single lot or a small area privileges which are not extended to other land in the vicinity is in general against sound public policy and obnoxious to the law. It can be justified only when it is done in furtherance of a general plan properly adopted for and designed to serve the best interests of the community as a whole.

The vice of spot zoning lies in the fact that it singles out for special treatment a lot or a small area in a way that does not further such a plan. Where, however, in pursuance of it, a zoning commission takes such action, its decision can be assailed only on the ground that it abused the discretion vested in it by the law. To permit business in a small area within a residence zone may fall within the scope of such a plan, and to do so, unless it amounts to unreasonable or arbitrary action, is not unlawful. *Bishop* v. *Board of Zoning Appeals,* supra; see *Parsons* v. *Wethersfield,* 135 Conn. 24, 29, 60 A. 2d 771. The zoning regulations of Bridgeport were adopted under the provisions of the General Statutes which gave the commission power to divide the municipality into districts and in each district to regulate the construction and use of buildings and land, and to change the regulations from time to time. General Statutes, Rev. 1930, §§ 424, 425, as amended (Rev. 1949, §§ 837, 838); see *De Palma* v. *Town Plan Commission of Greenwich,* 123 Conn. 257, 265, 193 A. 868. The commission might be guilty of spot zoning either in the original regulations it made or in later amendments, but, if in one or the other it decides, on facts affording a sufficient basis and in the exercise of a proper discretion, that it would serve the best interests of the community as a whole to permit a use of a single lot or small area in a different way than was allowed in surrounding territory, it would not be guilty of spot zoning in any sense obnoxious to the law. That was the situation in this case, and we cannot sustain the conclusion of the trial court that the action of the commission was improper as an instance of spot zoning.

The trial court also concluded that the change in zoning was in violation of the declared objects of the zoning regulations of Bridgeport, as stated in their

first section. That section states among the purposes to be served by them the promotion of the health, safety, morals and general welfare of the community and the lessening of congestion in streets. The reasons which led the commission to take the action it did, as we have stated them above, fall well within the scope of these purposes. The fact that the change was advocated only by Rome at the hearing and was opposed by numerous property owners and residents in the neighborhood did not, as the trial court concluded, deprive the commission of power to make it. It does not appear that there was anything like unanimous opposition to the change by property owners in the surrounding territory; but, even if there had been, it was the duty of the commission to look beyond the effect of the change upon them to the general welfare of the city. The reasons given before the commission by those who opposed the change were quite largely based on fear that other like changes might be made rather than upon the effect of the particular one in question. The property of no one was taken by the commission's decision; nor is there any finding or, indeed, evidence that property values would be affected; and no such situation is before us as was presented in *Strain* v. *Mims,* 123 Conn. 275, 193 A. 754, where, in speaking of a change in zoning from business to residence which practically affected only a single property, we said (p. 286): "However, where the value of property of an individual is seriously affected by a zoning regulation especially applicable to it, this fact imposes an obligation carefully to consider the question whether the regulation does in fact tend to serve the public welfare and the recognized purposes of zoning." Property owners in the neighborhood had no right to a continuation of the existing situation which could be effective against a decision by the commission reached

legally and properly. The state, through the authority it vests in zoning authorities, "may regulate any business or the use of any property in the interest of the public health, safety or welfare, provided this be done reasonably. To that extent the public interest is supreme and the private interest must yield." *Windsor* v. *Whitney*, 95 Conn. 357, 366, 111 A. 354; *Strain* v. *Mims*, supra. The commission could not properly be held, upon the record in this case, to have acted in violation of law in making the change it did.

How best the purposes of zoning can be accomplished in any municipality is primarily in the discretion of its zoning authority; that discretion is a broad one; and unless it transcends the limitations set by law its decisions are subject to review in the courts only to the extent of determining whether or not it has acted in abuse of that discretion. *First National Bank & Trust Co.* v. *Zoning Board of Appeals*, 126 Conn. 228, 237, 10 A. 2d 691. A court is without authority to substitute its own judgment for that vested by the statutes in a zoning authority. *Piccolo* v. *West Haven*, 120 Conn. 449, 455, 181 A. 615; *Mrowka* v. *Board of Zoning Appeals*, 134 Conn. 149, 155, 55 A. 2d 909. In view of the facts present in this case, the trial court could not properly find that the policy which determined the decision of the commission would so clearly fail to serve the proper purposes of zoning in the city that the court might set aside that decision; nor do the facts show that it was unreasonable to apply that policy in the situation before us. This is illustrated by the fact that, had this lot been placed in a business No. 3 zone as an incident to the adoption of an original plan for zoning the city as a whole, that action could not on this record be held an unreasonable exercise by the commission of its powers.

There is error, the judgment is set aside and the case

is remanded with direction to enter judgment dismissing the appeal.

In this opinion BROWN and JENNINGS, Js., concurred; ELLS and DICKENSON, Js., dissented.

DICKENSON, J. (dissenting). This, as the trial court held, seems to be a clear instance of spot zoning. The trial court has found no comprehensive plan to permit single lots or small areas to be used for business purposes in residential zones. The only evidence of such a plan is the testimony of a member that it was the "policy" of the commission to encourage decentralization of business in order to relieve traffic congestion and permit stores in outlying residential areas. So radical a departure from the general purpose of zoning to separate business from residential districts should not be left to the whims of a zoning board. It should come within "a comprehensive plan for zoning the town." *Parsons* v. *Wethersfield,* 135 Conn. 24, 29, 60 A. 2d 771.

I think there was no error.