ANNE KUTCHER ET AL. *v.* TOWN PLANNING COMMISSION
OF THE TOWN OF MANCHESTER ET AL.

BROWN, C. J., JENNINGS, BALDWIN, INGLIS and O'SULLIVAN, Js.

Argued March 6—decided April 29, 1952

*John D. LaBelle,* for the appellant (named defend-
ant), with whom were *Jay E. Rubinow* and, on the
brief, *Leon Podrove,* for the appellant (defendant
Patten).

*Charles N. Crockett,* for the appellees (plaintiffs).

BALDWIN, J. The defendant Patten owns a small machine shop in Manchester. Urged to expand his operations, which are largely experimental work for the aircraft industry, he purchased a parcel of land on Wetherell Street in the southwestern part of the town and proposed to erect thereon a small shop where thirty persons could be employed. The land is located in what is described by the town zoning ordinance as a rural residence zone. The neighborhood is not thickly populated. Just north of the Patten parcel a brook runs through low, swampy ground. Within a radius of 1000 feet to the north there is an automobile junk yard operated by Pantaleo, and, abutting the Patten property on the north, a large parcel owned by Ansaldi, with a sand and gravel pit and buildings used for storing trucks, bricks, steel, cement and other building materials. These businesses are in a residence B zone and are nonconforming uses, having been in existence before the zoning ordinance was adopted. Since that time, business activities on the Ansaldi property have increased substantially, and a variance was granted to permit the erection of buildings. Just east of the Patten property and well within a 1000-foot radius, a 125-foot right of way for electrical transmission lines of the Hartford Electric Light Company crosses the territory. We take judicial notice of the obvious fact that members of the commission were familiar with local conditions.

The use to which Patten proposed to put the property was forbidden in a rural residence zone. He made application to the named defendant, hereinafter referred to as the commission, for a change of zone of his land to industrial. The commission granted his application. The plaintiffs, adjoining and neighboring

property owners, appealed to the Court of Common Pleas. The case was tried on the transcript of testimony and the exhibits before the commission. This was the proper procedure. *Hoffman* v. *Kelly*, 138 Conn. 614, 619, 88 A. 2d 382. The court rendered judgment sustaining the appeal. The defendants have appealed to this court. The sole question is the legality of the action taken by the commission.

The gravamen of the plaintiffs' claim and of the trial court's judgment was that the change of zone for Patten's land from rural residential to industrial was not in furtherance of a comprehensive plan of zoning in the town but on the contrary constituted "spot zoning." Manchester first adopted a zoning ordinance in 1938. This ordinance created nine classes of zone, five of them residential, three business, and one industrial. An examination of the ordinance and the zoning map reveals that every part of the town was originally placed in a zone of one kind or another. The undeveloped and sparsely settled portions were placed in what was described as a rural residence zone. It is the defendants' claim that this zone was intended to be a reservoir for future development and embraced areas which might require, from time to time, further consideration by the zoning authority as the town grew. The fact that the area zoned as rural residential comprises at least half the total land area of the town supports this claim. Then, too, the ordinance establishes four other classes of residence zone.

The original ordinance found industry already established in the town. To deal with this situation, ten separate and relatively small areas in the outlying districts, in addition to other areas near the center of population, were constituted industrial zones. Many of these industrial zones are surrounded wholly or in large part by land designated as rural residence. The regu-

lations for an industrial zone prohibit noisy, noxious uses and all others that can be described as heavy industrial. The commission could reasonably assume that the purpose expressed by the map and the regulations was that the zoning authorities, forced to accept conditions as they found them at the time the ordinance was adopted, planned new zoning in the future which would permit limited industrial uses in segregated areas where the nature of the land and the trend already established demonstrated that such uses represented, in a rapidly growing, industrial community, the best possible employment of the particular area. The 1940 census showed the population of Manchester to be 23,799. Ten years later, in 1950, the population had grown to 33,906, an increase of more than 42 per cent. Obviously, zoning could not remain static. Growth demanded zone changes. The test is whether, in the light of these basic facts and certain others, not detailed here, which were before the commission and the court, the granting of Patten's application was arbitrary and illegal and exceeded the power of the commission.

Section 2 of chapter 17 of the charter of the town of Manchester (25 Spec. Laws 250) gives to the town planning commission power "(a) To prepare, adopt and amend a master plan for the development of the town . . .; (b) to have all the powers delegated to zoning boards and commissions by the general statutes and the zoning regulations of Manchester . . . . (d) to prepare and adopt plans for the redevelopment or improvement of districts and neighborhoods. . . ." Section 3 provides that the commission "shall also make detailed plans for the improvement, reconditioning or redevelopment of areas which in its judgment contain special problems or show a trend toward lower land values." General Statutes, § 837, gives to the zoning

authority power to regulate "the density of population and the location and use of buildings, structures and land for trade, industry, residence or other purposes." This section further provides that such regulations "shall be made in accordance with a comprehensive plan" in the interest of the avoidance of traffic congestion, of safety from fire and other dangers, and of promoting the health and the general welfare of the community. It also states that such regulations shall be made with reasonable consideration as to the character of the district and its peculiar suitability for particular uses, and with a view to conserving property values and "encouraging the most appropriate use of land" throughout the municipality.

Zoning authorities are endowed with a wide and liberal discretion. *Mallory* v. *West Hartford,* 138 Conn. 497, 505, 86 A. 2d 668, and cases cited. The court is powerless to replace the discretion of the commission with its own. *Piccolo* v. *West Haven,* 120 Conn. 449, 452, 181 A. 615; *Blake* v. *Board of Appeals,* 117 Conn. 527, 531, 533, 169 A. 195. The modification of zone boundaries and regulations by a zoning commission partakes of the nature of legislative proceedings. *Low* v. *Madison,* 135 Conn. 1, 8, 60 A. 2d 774; *Greenwich Gas Co.* v. *Tuthill,* 113 Conn. 684, 694, 155 A. 850. The court cannot substitute its judgment, especially in a legislative matter, for the judgment of the commission when the considerations are fairly debatable. *State* v. *Hillman,* 110 Conn. 92, 105, 147 A. 294. We have said that a comprehensive plan means a general plan to control and direct the use and development of property in a municipality or a large part of it by dividing it into districts according to the present and potential use of the properties. *Bishop* v. *Board of Zoning Appeals,* 133 Conn. 614, 618, 53 A. 2d 659; *State ex rel. Spiros* v. *Payne,* 131 Conn. 647,

652, 41 A. 2d 908. The granting to a small area of privileges which are not extended to other land in the vicinity can be justified by a zoning authority "only when it is done in furtherance of a general plan properly adopted for and designed to serve the best interests of the community as a whole." *Kuehne* v. *Town Council*, 136 Conn. 452, 460, 72 A. 2d 474; *Mallory* v. *West Hartford*, supra.

In the case at bar, the commission reasonably could have based its decision on the fact that there was a comprehensive plan. The area involved is small and somewhat isolated from other industrial zones. But the rezoning of such small areas is not necessarily prohibited as spot zoning. Two determining factors are involved. The zone change proposed must be one that will permit the use of the property affected in an appropriate manner, having regard to its type, location and the nature of the use being made, or which could be made, of the surrounding territory. The change must also be one that presents a reasonable and logical development of the comprehensive plan. That is to say, it must do more than meet the wishes of the owner in carrying out some proposal he may make; it must serve the public interest in the zoning development of the community. *Bartram* v. *Zoning Commission*, 136 Conn. 89, 93, 68 A. 2d 308; *Parsons* v. *Wethersfield*, 135 Conn. 24, 29, 60 A. 2d 771. The circumstances and conditions in matters of zone changes and regulations are peculiarly within the knowledge of the zoning commission. Where it appears that an honest judgment has been reasonably and fairly exercised after a full hearing, courts should be cautious about disturbing the decision of the local authority. The facts before the commission were such as to support, fairly and reasonably, its conclusion that the change of zone applied for would permit the use of the

land for a purpose which was suitable and appropriate and would create a new zone which was in keeping with the orderly development of the comprehensive plan for the zoning of the entire town.

There is error, the judgment is set aside and the case is remanded with direction to enter judgment dismissing the appeal.

In this opinion JENNINGS and INGLIS, Js., concurred.

BROWN, C. J. (dissenting). As the majority opinion makes clear, the defendant commission's creation of this two-and-one-half-acre industrial zone in the midst of the existing rural residence zone encompassing several thousand acres was without authority unless done pursuant to a comprehensive master plan. The principal contention of the defendants is that, since all of the town not otherwise zoned was originally incorporated in the rural residence zone, the intent of the zoning ordinance is that this zone constitutes a reservoir from which the other zones can be supplemented as circumstances may require. They urge, therefore, that in tapping this reservoir by the carving out of the defined area, comprised solely of the Patten land, the commission acted in compliance with a comprehensive master plan. To so hold would warrant its dotting a major portion of the Manchester landscape with similar tiny isolated industrial zones. That several such zones were originally created by the ordinance is of slight consequence, since this was done because of pre-existing nonconforming uses which had pre-empted the areas in question. Our decision in *Bartram* v. *Zoning Commission*, 136 Conn. 89, 68 A. 2d 308, constitutes no authority for the commission's action, since in that case the change of the small area involved from a residence to a business zone was warranted to provide retail stores to serve the extensive surrounding

residential area. The fact that the defendant Patten purchased the land in question with full knowledge that it was located within the rural residence zone gives added reason for a denial of his application. *Greenwich Gas Co.* v. *Tuthill,* 113 Conn. 684, 694, 155 A. 850. It is my conclusion that the trial court was correct in sustaining the plaintiffs' appeal, because the defendant commission's action in rezoning the Patten land, instead of being done in furtherance of the fulfilment of a comprehensive master plan, constituted a clear and unwarranted case of spot zoning.

In this opinion O'SULLIVAN, J., concurred.