GEORGE L. ALLIN ET AL. *v*. ZONING COMMISSION OF THE TOWN OF WASHINGTON ET AL.

FRANCIS KEALLY ET AL. *v*. ZONING COMMISSION OF THE TOWN OF WASHINGTON ET AL.

WARAMAUG TAXPAYERS, INC., ET AL. *v*. ZONING COMMISSION OF THE TOWN OF WASHINGTON ET AL.

BALDWIN, C. J., KING, MURPHY, SHEA and ALCORN, Js.

Argued October 5—decided November 20, 1962

130

*Peter B. Sullivan,* with whom was *William W. Hoppin,* for the appellants (plaintiffs Stern et al. in the first case).

*Clifton F. Weidlich,* for the appellants (plaintiffs in the second case and plaintiff Holmes in the third case).

*Walter M. Pickett, Jr.,* for the appellee (named defendant) in each case.

KING, J. In each of these three cases, an appeal was taken from the action of the zoning commission of Washington in creating, on the shore of Lake Waramaug within the town, a new zone, designated as the Lake Waramaug business district. The appeals were heard together in the Court of Common Pleas, which dismissed them and affirmed the decision changing the zone. They were also heard together, although on separate records, on the appeal to this court.

It was found by the trial court, and is unchallenged by all parties, that Peter M. Stern, a plaintiff in the Allin case, owned property within a fifth of a mile of the newly created zone and was, therefore, an aggrieved party within the rule of decisions such as *Tyler* v. *Board of Zoning Appeals,* 145 Conn. 655, 659, 145 A.2d 832, and *Fox* v. *Zoning Board of Appeals,* 146 Conn. 665, 666, 154 A.2d 520.

As the cases were presented in this court, only the Allin appeal need be discussed, although we will consider, in the disposition of it, such of the assignments of error in the other cases as do not involve the issue of aggrievement.

Zoning in Washington was adopted under the provisions of what is now chapter 124 of the General Statutes. Prior to the action of the commission which forms the subject matter of this appeal, the town was zoned into six districts. Washington Zoning Regs. § 1 (1957). Four were business districts: the Washington Depot business district, the New Preston Village business district, the Marble Dale business district, and the Woodville business district. The Lake Waramaug district was a residence district comprising an area contiguous to, and within 250 yards from, Lake Waramaug. Id. § 2 [D]. The rest of the town was a farming and residence district. The Lake Waramaug district was made subject to certain restrictions in addition to those established in the farming and residence district. Washington apparently has no express comprehensive plan covering the Lake Waramaug district,[1] and consequently the comprehensive plan for it is to be found in the zoning regulations themselves, considered as a whole. *Couch* v. *Zoning Commission,*

---

[1] Under date of July 13, 1959, the Washington planning commission wrote the Washington zoning commission that if, during the hearing on the proposed zone change, the opinion of the planning commission should be asked for, the chairman was authorized to state that it was the opinion of that commission that the most desirable use for "the land near the lower end of Lake Waramaug" would be for the public use of the residents of the town and that the commission recommended the acquisition of the land by the town for that purpose. Obviously this was no comprehensive plan, even if we assume that the land referred to was that embraced in the proposed zone change. *Levinsky* v. *Zoning Commission,* 144 Conn. 117, 123, 127 A.2d 822.

141 Conn. 349, 355, 106 A.2d 173 (a case also in-
volving the Washington zoning regulations).

By a petition dated May 21, 1959, a zoning change
was sought, the effect of which would be to create a
seventh district, to be known as the Lake Waramaug
business district, which would be open to the same
uses as the four existing business districts. The new
district would be carved out of the Lake Waramaug
district, that is, out of a residence zone, and would
embrace but four parcels of land. Three of these
were used for business prior to the adoption of zon-
ing in Washington and have continued as noncon-
forming uses. They are the Walberg Boathouse, the
Lake Shore Pavilion and Ritchie's Pizza Place. The
fourth parcel, Raymond Bulow's former residence,
does not appear to have had any business use. After
notice and hearing, the commission granted the
change of zone, effective August 8, 1959.

The commission gave several reasons for its ac-
tion. They may be summarized as follows: (1) The
change is in accord with the comprehensive plan.
(2) The change is in accord with the character of
the area and its peculiar suitability for providing
the public with an access to the lake. (3) The
change will promote the general welfare by provid-
ing a recreation place. (4) It will promote fire
safety by providing a place on the lake shore where
gasoline may be obtained for motorboats without
the necessity of transporting it by car. (5) The
change will conserve the value of buildings in the
area and encourage the most appropriate use of
land in the town. As far as appears, the commis-
sion considered each of the reasons given suffi-
cient to warrant its action. It follows that as far
as the reasons themselves are concerned, if any one
or more of them would support the action of the

commission, the plaintiffs must fail in their appeal. *Crescent Development Corporation* v. *Planning Commission,* 148 Conn. 145, 150, 168 A.2d 547.

Although a zone change of this character is open to suspicion as spot zoning, the commission has a wide discretion. *Guerriero* v. *Galasso,* 144 Conn. 600, 607, 136 A.2d 497; cf. cases such as *Woodford* v. *Zoning Commission,* 147 Conn. 30, 33, 156 A.2d 470, and *Tarasovic* v. *Zoning Commission,* 147 Conn. 65, 68, 157 A.2d 103. The change must, however, conform to the mandates of the enabling statute, § 8-2 of the General Statutes. One mandate is that the change be in harmony with the comprehensive plan. *Woodford* v. *Zoning Commission,* supra, 32, and cases cited. Since Washington is a small rural town, there would be no reason for creating business districts of large area. It is clear, when we consider the four business districts already in existence, that the comprehensive plan involves the creation of relatively small, scattered business districts. See *Couch* v. *Zoning Commission,* supra, 350. The commission merely created a fifth business district and thereby eliminated the nonconformity, in the case of at least three of the four parcels involved, of the business uses to which they had long been devoted. As to these three parcels, the term "spot zoning" would hardly apply. See *Chayt* v. *Maryland Jockey Club,* 179 Md. 390, 393, 18 A.2d 856. The statutory requirement that a change of zone be in conformity with the comprehensive plan was met, as the commission stated in its first reason, and there would be no justification for a conclusion to the contrary. See *Bartram* v. *Zoning Commission,* 136 Conn. 89, 93, 68 A.2d 308. Nor would there be any justification for a conclusion that the other requirements of the enabling statute were not

met. See *Pecora* v. *Zoning Commission,* 145 Conn. 435, 440, 144 A.2d 48; *Fairlawns Cemetery Assn., Inc.* v. *Zoning Commission,* 138 Conn. 434, 439, 86 A.2d 74.

It is true that a goal of zoning is the ultimate elimination of nonconforming uses. *Woodford* v. *Zoning Commission,* supra, 33. But this goal is not, in every instance, an effective shackle on a zoning commission. If it were, no zone could ever be lowered so as to render a nonconforming use conforming, and zoning, once established, would be forever fixed and immutable. The commission very probably considered that the nonconforming business uses predominating in the proposed new district had continued so long that the utilization of most of the area for business must be accepted as permanent and inevitable. See cases such as *Wade* v. *Town Plan & Zoning Commission,* 145 Conn. 592, 595, 145 A.2d 597. This consideration would provide a reasonable basis for the fifth reason of the commission—that the change of zone would encourage the most appropriate use of land in the town— and consequently would fully justify the action of the commission in creating the new district. While the plaintiffs claimed, and offered evidence tending to prove, that the commission acted illegally and in abuse of its discretion in that its real motivation was to help the individual owners of the property affected, we cannot hold that the court was required to find that the plaintiffs sustained the burden of proving that claim.

The plaintiffs stress the fact that in 1957 the commission had denied an application which sought a similar change of zone for land including that embraced in the change of zone now before us. The earlier proposal affected a larger area, and one of

the reasons given by the commission for its denial of the application was that "[t]he embraced area is much too large." It cannot be said that the zone change denied in 1957 involved substantially the same area as that now before us. Furthermore, the quoted reason for the denial of the 1957 application indicated that a zone change covering a smaller area and largely confined to land already devoted to non-conforming business uses might receive favorable action by the commission. The denial of the previous application did not preclude the commission from approving the present application. See *Tarasovic* v. *Zoning Commission,* supra, 70. A change of zone enacted by the local legislative body authorized to make such a change is before us here, not a decision by a board of appeals granting a variance. The change is a municipal legislative enactment which could properly be, and was, found to be in conformity with the comprehensive plan. Under these circumstances, the court was not in error in failing to find that the plaintiffs, or any of them, sustained the burden of proving any facts which would show that the action of the commission in denying the previous application for a zone change covering a different area, though that area included the parcels embraced in the present application, would preclude the granting of the present application. *Tarasovic* v. *Zoning Commission,* 147 Conn. 65, 71, 157 A.2d 103; *Winslow* v. *Zoning Board,* 143 Conn. 381, 390, 122 A.2d 789.

The other claims of error, including one based on the exclusion by the court of certain proffered hearsay testimony of a witness, merit no discussion.

There is no error.

In this opinion the other judges concurred.