LOUIS LAVITT ET AL. *v.* MYRTLE A. PIERRE ET AL.

KING, C. J., MURPHY, ALCORN, COMLEY and HOUSE, Js.

Argued May 7—decided June 3, 1964

*Robert W. Gordon,* for the appellants (plaintiffs).

*Bernard J. Ackerman,* for the appellees (named defendant et al.).

*Robert D. King,* for the appellees (defendants Ellington planning and zoning commission et al.).

ALCORN, J. On April 24, 1962, the Ellington planning and zoning commission granted a permit to the defendant Myrtle A. Pierre authorizing the construction of a commercial building on property owned by her. On May 7, 1962, work preliminary to construction of the building was begun, and, on May 15, 1962, the plaintiffs brought this action to enjoin the use of the premises for business or commercial purposes. The basis of the action is the claim that the land is not legally zoned for the contemplated use and, as a consequence, the building permit was illegally issued. A second count sought to enjoin the maintenance and use of an accessory septic tank and leaching field. The defendants denied the basic claims and pleaded nine special defenses, which need not be described. Following a court trial, judgment was rendered for the defendants, and the plaintiffs have appealed, assigning numerous errors in the court's findings and conclusions of fact and in the overruling of the plaintiffs' claims of law.

The finding is not subject to correction in any material respect. From it the essential facts may be summarized as follows. The town of Ellington adopted a zoning ordinance in August, 1952, dividing the town into general residence, rural residence, lake residence, commercial and industrial zones. At that time, the property now owned by the named defendant was owned by the Ellington Water Company and contained an area of 88,124 square feet. Adjoining it on the east was land owned by Edward F. Charter which embraced an area of 10,167 square feet. The combined parcels were bounded on three

sides by public roads. On the fourth, or east side, was the town hall, an amesite parking area and an elementary school. A grocery store, containing the town post office, was on the Charter land. On the water company land there was a building housing an insurance agency and the dwelling space used by Charter and his family. Also on the water company land were a well, piping and a pumphouse incident to the public water supply furnished by the water company. A grocery store and a garage which had formerly occupied a part of the water company land had been destroyed. The remnants of an old foundation remained, surrounded by an untidy area. When the zoning ordinance was adopted in 1952, the entire area, including the Charter and water company land, the town hall, the parking lot and the school, and, in fact, the major portion of the town, was zoned for rural residence. The uses permitted in a rural residence zone did not include any of the uses existing on the Charter or water company properties, except the partial occupancy by Charter, for dwelling purposes, of the building on the water company land.

At some undisclosed time between August, 1952, and December, 1955, the zoning ordinance was amended to create a new type of zone, designated as a neighborhood shopping zone, in which any residence use as well as any retail business use except the sale or handling of petroleum products or alcoholic beverages is permitted. In September, 1957, the planning and zoning commission held a hearing on an application by Charter as a result of which it undertook to change the zone of both the Charter and the water company properties to neighborhood shopping. Following this action, the zoning map, which, under the terms of the ordinance, was expressly in-

corporated by reference, was revised to show these properties embraced within such a zone. The parking area, town hall, and school remained in the rural residence zone. This change of zone marked the first attempt to establish a neighborhood shopping zone in the town. The change was in accordance with the comprehensive plan, met the area requirements, and was in keeping with progressive planning, and the property was in a logical and central location for commercial activity. Thereafter, Charter continued to operate a grocery store and post office on his land. The water company land continued to be used to supply water to the company's customers, and the insurance agency continued operations thereon. On March 16, 1959, Charter, who owned all but one share of the stock of the water company, the other share being owned by his mother, purchased the water company land but did not thereafter alter the use made of that property.

On May 5, 1960, the planning and zoning commission initiated a public hearing, to be held on May 18, 1960, for the purpose of readopting the zoning regulations of August 1, 1952, with all amendments thereto, and the zoning map, "current to date." Since 1957, the zoning map had designated the land formerly owned by Charter and the water company, and, in May, 1960, owned entirely by Charter, as a neighborhood shopping zone. Following the public hearing on May 18, 1960, the planning and zoning commission readopted the zoning map and the zoning regulations, effective May 20, 1960, with the statement that "Zoning Regulations changes were made because the Commission felt that due to so many changes of amendments and to avoid confusion, and to insure that all were properly enacted, it would be well to re-adopt and re-publish all

Zoning Regulations of the Town." In the ordinance as thus readopted § 1 (A) described the six zones referred to above, including the neighborhood shopping zone, and § 1 (B) provided that "[t]he boundaries of these districts are hereby established as shown on . . . [the zoning] map . . . which is hereby made a part of this ordinance and is on file in the Town Clerk's office in the Town of Ellington. In cases of uncertainty, the Zoning Authority shall determine the location of the boundary." Between September, 1957, and May, 1960, the area requirements for lots in a neighborhood shopping zone had been increased. Although the land then owned by Charter met the original area requirements, it failed to meet the amended requirements.

In February, 1961, Charter died, and the named defendant purchased from Charter's estate the land which had formerly belonged to the water company. She then applied for, and obtained, a building permit to construct a shopping center or commercial building on the property and started to prepare the site for construction of the building, whereupon the plaintiffs brought this action. Construction of the building continued, however, and has now been completed, and the building is occupied.[1] Sanitary requirements are met by a septic tank and leaching field installed beneath the surface of a small park owned by a local church and located across the street to the west of the named defendant's land. The installation is invisible, was approved by the zoning enforcement officer, the state board of health and the public utilities commission and does not impair the purity of the public water supply.

---

[1] The named defendant's conduct in thus proceeding with the construction adds no strength to her position in this case. *Armstrong* v. *Leverone*, 105 Conn. 464, 475, 136 A. 71.

The court concluded that the rezoning of the Charter and water company properties as a neighborhood shopping zone in 1957 was invalid for lack of proper notice, and this conclusion is not contested. The court further concluded that the readoption of the zoning ordinance and zoning map in May, 1960, was effective, prospectively, to create a valid neighborhood shopping zone of the original Charter and water company lands as delineated on the zoning map. The court also found that the valuation of the property of the plaintiffs Victor A. Betz and Arthur L. Bouthillier had "been affected" by the construction of the shopping center. While there is no finding that the valuation was adversely affected, that would appear to be the intended meaning when the finding is read with the further conclusion that these plaintiffs were aggrieved. The plaintiffs alleged irreparable injury in their complaint and, based on a reasonable construction of the court's finding, at least Betz and Bouthillier appear to have established that essential requirement for the maintenance of this action. See *Stapleton* v. *Lombardo,* 151 Conn. 414, 416, 198 A.2d 697; *Jobert* v. *Morant,* 150 Conn. 584, 588, 192 A.2d 553.

The effect of the action taken by the planning and zoning commission at its meeting in May, 1960, presents the crucial issue in the case. The plaintiffs claim that that action was ineffective to establish a neighborhood shopping zone embracing the named defendant's property (the former water company property), both because no valid notice of the public hearing was given and because, even assuming a legal public hearing, the terms of the amendment which had previously increased the area requirements of a neighborhood shopping zone prevented the commission from simultaneously adopt-

ing that amendment and establishing the smaller neighborhood shopping zone originally designated in 1957. The plaintiffs claim that timely notice of the hearing was not given, that the notice was faulty in failing specifically to describe the area of the neighborhood shopping zone embracing the named defendant's property, and that the zoning map should have been published. The court concluded that the procedures of the commission complied with § 8-3 of the General Statutes, and the subordinate facts support that conclusion.

It was unnecessary for the commission to single out, for specific description, the only neighborhood shopping zone shown on the map. It was apparent from the language of the notice that the action to be considered was a readoption of the entire zoning ordinance and the zoning map. If the plaintiffs' claim that a specific description of the existing shopping area, as shown on the map, was required to be included in the notice, then a like description of all other zones in the town should logically receive the same treatment. The zones to be affected by the proposed action specifically appeared on the map which was readily available for inspection, and to require the zoning commission, in addition, to describe the zones in the published notice would impose a wholly unnecessary requirement. See *Neuger* v. *Zoning Board,* 145 Conn. 625, 630, 145 A.2d 738. The claim that a copy of the map should also have been published is answered by the fact that nothing in § 8-3 of the General Statutes required such publication.

The meeting having been legally called in compliance with the statute, we come to the question whether the commission could legally establish the neighborhood shopping zone embracing the named

defendant's property as delineated on the zoning map and at the same time adopt inconsistent area requirements for such zones as might, in the future, be established in other parts of the town. In our approach to the question, certain basic facts stand out. The area embracing the named defendant's land was logically and reasonably adapted to a shopping area, being centrally located and surrounded by public roads and various public buildings. It was assumed to be a legally existing neighborhood shopping zone and had been so designated for some two and one-half years. Before being zoned for neighborhood shopping, the land had been devoted to nonconforming business uses in a rural residence zone. At the time the commission had undertaken, in 1957, to zone the area for neighborhood shopping, it met the requirements for such a zone. No other such zone existed in the town in 1960. The 1960 meeting was not called to validate any illegality resulting from the 1957 zoning procedure because no invalidity had then been suggested. The objective was to reenact, prospectively, the existing zoning ordinance as amended, together with the zoning map, which it incorporated by reference and which had long been a matter of public record. The meeting was called on the initiative of the commission, and no claim is made that it involved an ulterior purpose to benefit an individual property owner, much less the named defendant, who did not then own the property. See cases such as *Vece* v. *Zoning & Planning Commission,* 148 Conn. 500, 503, 172 A.2d 619; *Nowicki* v. *Planning & Zoning Board,* 148 Conn. 492, 499, 172 A.2d 386.

In taking the action which it did at the 1960 meeting, the planning and zoning commission acted in a legislative capacity. Its proper concern was with

the existing uses of land and the encouragement of
the most appropriate uses of land which the general
welfare of the town dictated. In the proper exercise
of its legislative function, it could recognize the
continuance of a valid nonconforming use; *State* v.
*Huntington,* 145 Conn. 394, 400, 143 A.2d 444; or,
by an appropriate change of zone, convert an exist-
ing nonconforming use to a conforming use; *Allin* v.
*Zoning Commission,* 150 Conn. 129, 134, 186 A.2d
802; or, as it did in this case, zone the area in a man-
ner designed to encourage the business use to which
it had already been devoted and for which it ap-
peared to be most appropriate. *Wade* v. *Town Plan
& Zoning Commission,* 145 Conn. 592, 596, 145 A.2d
597. The requirement of uniformity imposed by § 8-2
of the General Statutes does not deprive the com-
mission of all discretion but, on the contrary, per-
mits it, within reasonable limits, to determine
whether substantial differences, germane to the
subject and purposes of the ordinance, exist to
justify a given zoning classification. See *Murphy,
Inc.* v. *Westport,* 131 Conn. 292, 304, 40 A.2d 177;
see also cases such as *Lessner* v. *Zoning Board of
Appeals,* 151 Conn. 165, 167, 195 A.2d 437; *Corsino*
v. *Grover,* 148 Conn. 299, 303, 170 A.2d 267; *Schultz*
v. *Zoning Board of Appeals,* 144 Conn. 332, 335, 130
A.2d 789. The statutory requirement of uniformity
does not militate against the grant of a specific ex-
ception to a general zoning requirement so long as
the exception is reasonable and for the general
community benefit rather than for the benefit of a
single landowner. *Winslow* v. *Zoning Board,* 143
Conn. 381, 391, 122 A.2d 789; *Neuger* v. *Zoning
Board,* supra, 633; *Summ* v. *Zoning Commission,*
150 Conn. 79, 86, 186 A.2d 160. Under the circum-
stances confronting the commission in May, 1960,

and in the light of the foregoing principles, it cannot be said that the commission violated the uniformity requirement of § 8-2 in creating, as a neighborhood shopping zone, the area already shown on the zoning map which embraced the property later acquired by the named defendant and, at the same time, retaining the more exacting area requirements for neighborhood shopping zones which might later be, but had not yet been, established in other areas of the town.

The plaintiffs' claim that the commission's action amounted to spot zoning is without merit. An essential ingredient of the proof necessary to establish spot zoning is a showing that an inappropriate use of the land is involved in the creation of the zone. *Kutcher* v. *Town Planning Commission,* 138 Conn. 705, 710, 88 A.2d 538; *Bartram* v. *Zoning Commission,* 136 Conn. 89, 94, 68 A.2d 308. The physical location of this land, and the uses to which it had been put for many years, negated any claim that a neighborhood shopping zone would permit an inappropriate use. See *Raffia* v. *Zoning Board of Appeals,* 151 Conn. 484, 487, 199 A.2d 333. The court has found not only that the zone was in a logical location for commercial activity but that the designation of the area as a neighborhood shopping zone accorded with the comprehensive plan found in the zoning ordinance as a whole.

The plaintiffs' complaint of the use of the small park as an area for the septic tank and leaching field, which forms the subject matter of the second count, does not require extended discussion. Even if it were to be assumed that the use of the park for that purpose should be held to be improper under the reasoning of cases such as *Adley* v. *Paier,* 148 Conn. 84, 86, 167 A.2d 449, and *Gada* v. *Zoning*

*Board of Appeals,* 151 Conn. 46, 48, 193 A.2d 502, the plaintiffs have failed to establish that this use has resulted in any injury to them. In an injunction action such a failure is fatal.

There is no error.

In this opinion the other judges concurred.