[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In this affordable housing zoning appeal the plaintiff sought a change of zone from rural density (R D-2 acre) to medium density (MD — 10,000 sf) on 4.2 acres of land located at the apex of the triangle formed by the intersection of state routes 12 and 21 in the town of Killingly. According to his site plan the plaintiff seeks to build 8 single family homes on lots ranging in size from 11,954 square feet to 35,836 square feet. Such a development would quadruple the density allowed in the existing zone but would yield two affordable housing units. The defendant does not challenge the propriety of the plaintiff's application as being one for an affordable housing development.
While the property is surrounded on all sides by the RD zone it is noted that the GC (general commercial) zone is less than 1,000 feet away to the south on the opposite side of the street. In addition, a view of the premises conducted in the presence of counsel revealed that within 1,000 feet to the north on the same side of the street there exists a nursing home facility which all who attended the view believed to be legally non conforming. Other neighboring uses are predominantly single family and are located on lots considerably larger than the size which the plaintiff proposes.
AGGRIEVEMENT
The plaintiff testified that he has been the uninterrupted fee simple owner of the property at all times pertinent to this proceeding. He introduced the deed of conveyance establishing his ownership. The plaintiff is found to be aggrieved. Goldfeld v.CT Page 7283Planning and Zoning Commission, 3 Conn. App. 72 (1985).
THE COMMISSION'S REASONS
Before evaluating the reasons for denial which were articulated by the commission it is necessary to set the parameters of judicial review under § 8-30g. The plaintiff has urged the court to adopt the "substantial evidence rule" enunciated by our Supreme Court in Huck v. Inland Wetlands andWatercourses Agency, 203 Conn. 525 (1987) as the evidentiary standard for the requirement that the commission's decision be supported by "sufficient evidence". This precise interpretation of § 8-30g(c)(1) was rejected by that Court in Kaufman v.Zoning Commission, 232 Conn. 122, 153 (1995) in favor of a less stringent requirement that "the record before the [Commission] support[ed] the decision reached. West Hartford InterfaithCoalition, Inc. v. Town Council, 228 Conn. 498, 513 (1994). Clearly Section 8-30g(c) imposes the burden of proof as to this evidentiary standard squarely on the commission.
In this analysis the court draws from our traditional zoning jurisprudence in applying the rule that "when a zoning commission has stated its reasons . . . the reviewing court ought only to determine whether the assigned grounds are pertinent to the considerations which the authority was required to apply, and whether they are reasonably supported by the record." FirstHartford Realty Corporation v. Planning and Zoning Commission,165 Conn. 533, 543 (1973). The action of the commission should be sustained if even one of the stated reasons is sufficient to support it. Zygmont v. Planning and Zoning Commission, 152 Conn. 550,553 (1965). The key to the application of this test is whether any one reason is pertinent to the considerations which the zoning authority was required to apply. Unlike in conventional zoning appeals, the considerations which the authority is required to apply are not limited to § 8-2. With the enactment of § 8-30g the legislature has created a new set of considerations which the authority must apply in affordable housing cases.
REASON #1. The inappropriate shape of the subject parcel,as it abuts a V-shaped intersection formed by state routes 12 and21.
REASON #2. The subject parcel is located at theintersection of two highly traveled state routes (Rtes. 12 andCT Page 728421).
Testing the assigned reasons against this standard, the record plainly discloses that there is ample support for the commission's findings that the property abuts a V — shaped intersection formed by state routes 12 and 21. Were this a conventional appeal from the denial of an application for a change of zone, the commission's characterization of the triangle "as inappropriate" would likely survive judicial scrutiny because Section 8-2 requires zoning commissions to "encourage the most appropriate use of land throughout" the municipality. On the whole, there is a reasonable basis in the record for the commission to have reached this conclusion. Kaufman v. ZoningCommission, supra at 160. However, neither the commission nor the record upon which it acted indicates that that the shape of the parcel would damage a substantial public interest which the town is entitled to protect. On the other hand, if triangular shape is considered in conjunction with the traffic safety issue, infra, p. 11, then both of these reasons survive or perish along with reasons 7, 8 and 9. Under either theory, the reasons fail on the same grounds given for reasons 7, 8 and 9, infra.
REASON #3. The proposal is inconsistent with the futureland use plan, which indicates the future land use of the parcelto be Low Density. In accordance with the Plan of Development theLow Density Zone permits two houses per acre. The proposed zone(Medium Density and sewered) would permit 4.3 units peracre.
Generally, a municipal plan of development adopted under § 8-23 of the General Statutes is advisory only except as to municipal improvements and subdivision, as to which it is controlling. Purtill v. Town Planning and Zoning Commission,146 Conn. 570 (1959). One would expect a zoning commission to be guided by the plan. Mott's Realty Corp. v. Town Planning andZoning Commission, 152 Conn. 535, 538 (1965), but not necessarily bound by it. In fact, consistency of a zoning commission's action with a plan of development has usually been recognized as a valid and proper reason to support the agency's action. Calandro v.Zoning Commission, 176 Conn. 439, 441 (1979). Effective October 1, 1991 the legislature gave added importance to a municipal plan of development by mandating that a commission "state on the record its findings on boundaries or changes thereof with the plan of development". P.A. 91-398. Now § 8-3a(a). CT Page 7285
Plainly, the town land use maps propose that this property remain in a rural or low density residential classification and so there dearly is sufficient evidence in the record to support this reason. Since the plaintiff's proposed use, namely single family residential, is the same as the plan of development use recommended, this reason must be grounded in inappropriate density, viz: 2 units per acre vs. 4 per acre.
Zoning for density, is, to be sure, a proper goal for a zoning commission under § 8-2. Issues of density are usually fairly debatable. Lurie v. Planning and Zoning Commission,160 Conn. 295, 309 (1971). Our legislature has mandated that zoning commissions adopt regulations to "encourage the development of housing opportunities for all citizens of the municipality consistent with soil types, terrain and infrastructure capacity. This language has been interpreted not only to be mandatory but broad in scope. Builders Service Corporation v. Planning andZoning Commission, 208 Conn. 267, 305 (1988). In the Killingly plan of development discussion of the need for affordable housing is conspicuously absent. It is obvious that this plan, which was adopted in 1987, and the density classifications which it proposes fails to take into account the need for affordable housing. Where a reason given for denial of an affordable housing application is based upon a land use plan or plan of development which fails to include a program for eventual satisfaction of a zoning authority's statutory obligation to zone for affordable housing that reason is immediately suspect and must be scrutinized very carefully by the court.
This court's reasoning in Kaufman v. Danbury,9 Conn. L. Rptr. 19 at 603 (1993) aff'd 232 Conn. 122 (1995), is apposite here.
"In order to qualify as a legitimate basis for denial of this application, density must represent a substantial public interest in `health, safety or other matters which the commission may legally consider'. Section 8-30g(c)(2). Thus, it is not just a public interest which the commission must seek to advance but that public interest must be substantial. While established rules of statutory construction would approve resort to a dictionary definition of substantial (strong, solid, firm, stout, Webster's
New World Dictionary, 2d College Ed. at 1420) judicial gloss for the provision may be obtained in federal case law as well. In adopting a substantial public interest test the legislature can be presumed to be aware of the report of the Connecticut Blue CT Page 7286 Ribbon Commission on Housing. (February 1, 1989) which discussed both state and federal judicial decisions affecting housing. It appears that from that body of law the legislature borrowed the compelling governmental interest test and its burden shifting characteristics and devised its own substantial public interest test. See, Kennedy Park Homes Association v. City of Lackawana,436 F.2d 108 (2d Cir. 1971); U.S. v. City of Black Jack,Missouri, 508 F.2d 1179 (8th Cir. 1975); Huntington BranchNAACP v. Town of Huntington, supra. In U.S. v. City of BlackJack, Missouri, the court outlined a three part test for determining whether any of the reasons advanced rose to the level of a compelling governmental interest. That test requires both a qualitative and quantitative analysis. Id. at 1187, n. 6 and 7. The legislative history of § 8-30g seems to support this test. 32 H.R. Proc. Pt 30, 1989 Session, 10,642."
An examination of the record reveals that this density based reason reflects nothing more than the commission's value preference to maintain the current classification. A town's preference to maintain a particular zoning category is normally based on a variety of circumstances. But that does not relieve the court of weighing the town's justification against the adverse effect that the plaintiff would suffer by the denial.Huntington Branch NAACP v. Town of Huntington, supra at 937. Our own Supreme Court has itself required a zoning commission to establish that it reasonably could have concluded that "substantial public interests" were implicated by the zone change, in light of the record evidence as to both the level of harm that could result from the zone change amd the probability that the zone change would cause that harm. Kaufman v. Danbury,
supra at 154. In this case the record is barren of any evidence that a density based preference is supported by a "substantial public interest" which would be harmed by the zone change. Compare, Wisniowski v. Planning and Zoning Commission, 37 Conn. App. 303,315 where the court held that zoning, (as distinguished from planning) conformity is not necessarily required for approval of an affordable housing application.
REASON #4. The proposed zone change is out of characterwith the surrounding area.
REASON #5. The subject parcel is unsuitable for theconcentrated development proposed by the applicant.
Both of these reasons seem to deal with the character of the CT Page 7287 neighborhood. Reason 5 standing by itself, has no meaning. The term "unsuitable" has no significance in the context of this case unless the site is unsuitable for a particular reason which here remains unspecified.
"Character of the neighborhood" reasons usually relate to feared diminution of property values rather than architectural or size and bulk considerations. There is no mention in the record of either of these. Protection of property values has long been an acknowledged purpose of zoning. Karen v. East Haddam,146 Conn. 720, 729 (1959). Thus, in a given case a zoning authority may have a legitimate public interest in protecting property values. In this case the commission has failed to state the basis for this belief and the record is consistent with that omission.
"Under § 8-30g the significance of protecting property values as a substantial public interest falls to a lower level in the hierarchy of importance. It is the view of this court that the legislature has already determined that an affordable housing development should not, solely by its nature, be considered harmful to property values." Pratt's Corner Limited Partnershipv. Southington Planning and Zoning Commission,9 Conn. L. Rptr. 101, 129 (1993).
The fact that market rate units constitute eighty percent of the project does not change the nature of the development from one for affordable housing. The commission has failed to demonstrate that and these reasons implicate a substantial public interest, nor has it found that they outweigh the need for affordable housing.
REASON #6. The proposed zone change and resultingdevelopment would result in a negligible increase to theaffordable housing stock in the Town.
This reason is susceptible to two different interpretations in view of the lack of any explanation in the record. First, "negligible" could mean that the addition to Killingly's affordable housing stock of two units is simply unimportant or trifling in view of the needs of the town. Webster's New World Dictionary, 2d College Ed. 1979. The other interpretation is that implicit in the reason is a balancing test that the addition of two affordable housing units does not justify the change of zone with its attendant harmful consequences. CT Page 7288
Interpretation number one raises the issue that our Supreme Court declined to reach in the Hartford Interfaith Council case, supra at 521 n. 23. Killingly's position is not unlike the position which the zoning commission took in Kaufman v. Danbury,
supra at 600. In that case Danbury argued that the city's need should have been assessed in light of the fact that at the time of trial, its state-certified affordable housing inventory was at 9.8, just 2 tenths percent below the threshold. Danbury urged the court to adopt a sliding scale balancing test so that the closer a municipality comes to the exemption limit of ten percent (Sec.8-30g(f) the less weighty need be the public interest and the greater the probability will be that the public interest relied on will outweigh the need for affordable housing. Similarly, this interpretation of reason 6 would postulate that the lesser the number of affordable housing units in the development the more substantial the public interests become which the commission seeks to protect; or to put it another way, the fewer the units the less substantial the public interests need be.
While our Supreme Court had no need to address this issue inKaufman v. Danbury, supra at 600, this court analyzed the argument as follows. "These amendments (1991 legislative session) as well as numerous others made in recent years, see, Pratt'sCorner Partnership v. Southington, supra, dearly reflect not so much a concern for housing conditions in individual municipalities but rather a more comprehensive statewide concern for the problem. When a particular municipality exceeds the 10% threshold it not only extricates itself from the strain of the statute but it contributes to the amelioration of a statewide condition.[1]
The need for affordable housing is a part of the equation that is given by the legislature. The weighing process then is between the given element of need and the public interests which the commission indicates are substantial. In performing the balancing test then the commission must assess the magnitude of the public interest `which may vary from case to case, against the element of need which is fixed".
All this means is that a municipality is not at liberty to characterize the number of affordable housing units proposed in an affordable housing development as "negligible". The legislature has determined that any development in which twenty percent of the units are affordable within the statutory definition is entitled to special status under the law. It matters not whether the CT Page 7289 number of affordable housing units proposed is 1 or 101.
The record does not reasonably support the implicit claim that the public interest identified in this reason rises to the level of substantiality or that it dearly outweighs the need for affordable housing as the term has been discussed above. See concurring opinion, Berdon, J., in West Hartford Interfaith,
supra at 528.
REASON #7. The proposed zone change and resultingdevelopment would reduce traffic safety and safety of children inthe area.
REASON #8. The proposed zone change and resultingdevelopment would reduce school bus safety and further hampertraffic in the area.
REASON #9. Route 21 is a substandard road (less than 26' inwidth — new town road minimum width requirement, as persubdivision regulations) for increased traffic.
These reasons deal with traffic safety. That traffic safety constitutes a substantial public interest warranting protection is beyond debate. That it constitutes a valid and pertinent reason for a zoning commission to deny a change of zone has long been recognized in our fabric of zoning law. First HartfordRealty Corp. v. Planning and Zoning Commission, supra at 543.
The plaintiff argues that there is insufficient evidence in the record to support these findings. The plaintiff correctly points out that there is no expert testimony which advanced such a claim. The plaintiff further accurately notes that the Town Planner advised the commission that their concerns about traffic safety could adequately and "more properly" be addressed at the site planning stage which under Killingly's legislative scheme would occur at the time of subdivision review. In fact, the Town Planner stated to the commission that he did not "believe that there are any legitimate planning concerns including size and density which support a denial". As he explained, because routes 12 and 21 are state highways, Connecticut DOT will review the plans and may require such ameliorative measures as "reduction in speed limits, additional signs and maintenance of clear lines where driveways intersect the road".
The defendant, however, points to the substantial public CT Page 7290 opposition to the application which was expressed at the public hearings. Several residents made statements and others sent letters. Representative of the claims made were statements that "the kids are always running across the street"; "the animals are always in the street". Concerns were voiced about school bus safety. No accident history or traffic counts were presented to the commission either formally or informally. The closest thing to a traffic count offered by the neighbors was an actual count done of "72 trucks and cars in the past few days." If this were accurate, even for a rural highway, this could mean that assuming an 8 hour day (daylight) and a "few days" at 2, 4.5 vehicles per hour were docked traveling on these highways. By any standard this cannot be considered heavy traffic.
As Judge Berger said in TCR New Canaan v. Planning and ZoningCommission, 6 Conn. L. Rptr. 91 at 106 (1991). "Zoning is not to be based upon the plebiscite of the neighbors. Their wishes are to be considered but the final ruling is to be governed by the basic consideration of the benefit or harm involved in the community at large. Arkenberry v. City of Topeka, 421 P.2d 213,219 (1966)".
This admonition is especially applicable to a development that will contain an affordable housing component. The fear of an influx of families of low and moderate income into an established neighborhood of single family homes tends to alarm the citizens and promotes embellished statements of probable harm to the point where they frequently become pretextual.
On the other hand, the court may assume without deciding that the commission was entitled to reject this application on the basis of the unsworn testimony of lay witnesses or, as the defendant argues, on the basis of its own members' testimony or personal knowledge. Kaufman v. Zoning Commission, supra at 122. In fact, in the areas of traffic congestion and safety our Supreme Court has approved of commission members relying on their own knowledge of the area to confirm facts to which area residents testify. Primerica v. Planning and Zoning Commission,211 Conn. 85, 97 (1989). Such reliance, however, may not be kept undisclosed to either the plaintiff or the court. In the absence of expert testimony the commission is required to "point to otherprobative evidence in the record showing that the zone change implicated substantial public interests". (Emphasis added).Kaufman at 157. i.e., traffic safety. On the contrary, the commission both in its decision and statement of reasons has CT Page 7291 pointed to no probative evidence whatsoever.
Reason number 9 introduces the additional notion that route 21 is substandard in width in that it does not meet present day town subdivision standards. Having lived and travelled in this state since birth the court takes judicial notice of the fact that the state, especially the northern half, contains numerous state highways which are considered too narrow by today's standards. On that point the court notes that at page 19 of the Town Plan of Development, figure 8 shows a 1981 average daily traffic volume on route 21 of 1050 vehicles which when compared to the other roads shown on the map is easily below average.
Elsewhere in the Plan of Development (P. 12) the Commission has stated that "route 12 has reached its capacity only in the borough". The plaintiff's property is not located in the borough.
Additionally, the Plan notes that route 12 is a major north-south road in the town and that while it formerly provided a "high level of service for through traffic" it no longer serves that function. Rather, it is now classified an "arterial service corridor" implying that it now receives less intensive vehicular use.
Certainly, the commission was free to order a traffic study on its own had it deemed it necessary or appropriate or could have ordered the plaintiff to provide one at its own cost. It did neither although according to Appendix III of the Plan of Development it has in the past ordered such a study when it felt it was appropriate. In fact, that study included an accident history, a traffic volume count and a turning movement analysis.
Even if the commission sought to rely on probative evidence in the record in reaching its decision such reliance could have cited only generalized citizen fears. Even if these fears had been based on actual experiences or had the commission revealed what evidence it relied on, it made no finding under §8-30g(3) or(4) that the public interests represented by these fears either clearly outweighed the need for affordable housing or that such public interests could not be protected by reasonable changes to the development. The commission has failed to sustain its burden of proof as to these reasons.
REASON #10. Any affordable housing project should belocated on a parcel presently zoned Medium Density.
CT Page 7292
This court has consistently held that a municipality's own affordable housing regulations may not be utilized as an exclusive substitute for a bona fide application for affordable housing under § 8-30g. National Associated Properties v.Planning and Zoning Commission of North Branford, CV92 0518954 S — Hartford/New Britain Judicial District at Hartford (11/18/93, Mottolese, J.) aff'd on the grounds, 3 Conn. App. 788 (1995);Town Close Associates v. New Canaan Planning and ZoningCommission, CV93 0527279 S, Hartford/New Britain Judicial District at Hartford (4/24/95, Mottolese, J.). This position finds support in the West Hartford Interfaith case, supra at 511, wherein the court disapproved of the practice of a zoning authority utilizing zoning to impede a developer from availing itself of § 8-30g. As the court stated, "a town could remove itself entirely from § 8-30g by eliminating any zones appropriate for the development of affordable housing". Likewise, because Wisniowski v. Planning and Zoning Commission, supra, held that a municipality's existing zoning regulations in and by themselves may not constitute a bar to an affordable housing development, then by the same reasoning, a town may not insist that affordable housing be located only in particular zones which it has set aside for that purpose.
REASON #11. The proposed zone change does not meet thecriteria for the need of a zone change, "changes that have takenplace in the rate and pattern of the Town's development and landuse." (Page 1213, Town of Killingly Zoning Regulations.
This reason misconstrues the legislative nature of the commission's function in this case. The legislative function is not circumscribed by the need for a change of condition. "A zoning commission is free to modify its legislation whenever time, experience, and responsible planning for contemporary orfuture conditions reasonably indicate the need for a change" (emphasis added). Malafronte v. Planning and Zoning Board,155 Conn. 205, 209 (1967). The enactment of § 8-30g and its related legislation clearly suggest such a need.
This reason therefore has no legal validity.
Reason 12. The proposed zone change and resultingdevelopment violates Section 120 (intent) #'s 1-9 of the Town ofKillingly Zoning Regulations.
CT Page 7293
Section 120 of the Killingly Zoning Regulations constitutes a legislative expression of the major purposes of zoning. It is conspicuous however by the absence of any mention of affordable housing. It is laudable as far as it goes. However, it does not appear that Killingly has yet begun to respond to the legislative mandate for affordable housing expressed in § 8-2. The reason as drafted, however, is not a reason at all. It says nothing more than that the application violates the intent of the zoning regulations. As stated above, if non compliance with existing regulations may not stand in the way of an affordable housing development then how can non compliance with a highly generalized expression of intent do so? The plain answer is that it cannot.
REASON 13. The proposed zone change, if approved, wouldresult in spot zoning.
In a conventional zoning appeal the practice of spot zoning is condemned because the central purpose of the action is to benefit a single property owner rather than the community at large. Morningside Association v. Planning and Zoning Commission,162 Conn. 154, 162 (1972). However, the spot zoning cases recognize an important exception to the general rule. This exception is that these principles do not prevent a zoning authority from imposing specific conditions on the approval of a change in zoning classification so long as the conditions are reasonable and are for the general community benefit rather than for the benefit of a single landowner. Lavitt v. Pierre,152 Conn. 66, 75 (1964).
The imposition of specific conditions by a zoning commission to ensure compliance with § 8-30g has been approved by the Supreme Court in Kaufman v. Danbury, supra at 148. Reason number 13 is legally insufficient.
RELIEF
The defendant requests that the court remand this case to the commission in order to protect the public interests which the commission identified. Because of the scale, size and location of the project on state highways remand is inappropriate and unnecessary. As the town planner told the commission, its traffic safety concerns can be addressed satisfactorily at the subdivision stage. The commission's decision is reversed.
MOTTOLESE, J. CT Page 7294