VINCENT A. JABLON ET AL. *v.* TOWN PLANNING AND ZONING COMMISSION OF THE TOWN OF NEWTOWN ET AL.

KING, C. J., ALCORN, HOUSE, COTTER and RYAN, Js.

Argued December 6, 1968—decided January 16, 1969

*Herbert B. Wanderer,* for the appellants (plaintiffs).

*Russell L. Post, Jr.,* with whom were *Robert Ewing* and *John M. Dillman,* for the appellees (defendant Smith, Kline and French Laboratories et al.); with him also, on the brief, was *Paul V. McNamara,* for the appellee (named defendant).

COTTER, J. The defendant town planning and zoning commission of the town of Newtown held a public hearing on June 10, 1966, on the application of the defendants John W. Anderson, owner, and Smith, Kline and French Laboratories, optionee, to amend the zoning map by changing the classification of a parcel of Anderson's land consisting of approximately 47.448 acres from a farming and residential (R-1) district to an M-2 industrial district. Thereafter, at an executive session, the commission granted a change of zone of the tract in question to an M-2A industrial district.[1]

I

The plaintiffs alleged in their appeal to the Court of Common Pleas that the commission previously, on April 1, 1966, "denied a change of zoning classification of the premises . . . and no new con-

[1] The plaintiffs did not pursue in this court an earlier allegation of impropriety grounded on the fact that, although the application and notice referred to a proposed change of classification to an M-2 industrial district, the commission granted a change of zonal classification to an M-2A industrial district.

ditions have arisen, nor have any changes occurred since said decision was made which have substantially altered the character of the area." At a meeting in February, 1966, the commission, in executive session, considered obtaining assistance in the area of "industrial site evaluation" and voted to engage Technical Planning Associates "for the immediate purpose of recommending residential locations which would be more suitable for industrial use, and also for their assistance to the Advisory Committee in reviewing the zoning regulations." A month later, the commission, on its own initiative, in accordance with a motion made by Arthur Spector, its chairman, voted to hold a publc hearing to consider a change of zone, from a farming and residential (R-1) district to an M-2 industrial district, of approximately eighty acres of land owned by Anderson, John and Hazel Sedor, and Vincent and Margaret Jablon and including the subject property, which is only a portion of the property owned by Anderson. A full public hearing was held by the commission on its application on March 25, 1966. At that public hearing, Spector gave the presentation for the commission. At the executive session of the commission on April 1, 1966, "[a]fter lengthy discussion, it was moved by Arthur Spector that the Commission reject its application . . . pending updating of the zoning regulations governing industrial land." This action would appear to be in a sense a withdrawal by the commission of the application it initially sponsored which involved other parcels of a different size and which requested a change to a zonal classification other than the one granted in the present case.

We are cautious about disturbing the decision of the commission to proceed and act on the present

application where it appears from the lengthy record before us that the judgment of the commission in this respect has been reasonably and fairly exercised and honestly arrived at after giving proper consideration to the public welfare in evaluating the needs of the town in relation to the appropriate use of land throughout the town. *Metropolitan Homes, Inc.* v. *Town Plan & Zoning Commission*, 152 Conn. 7, 11, 202 A.2d 241. It does not appear that the commission acted improperly in considering the application under review in the present case. The action taken on the former petition did not preclude the commission from passing as it did on the application of Anderson and Smith, Kline and French Laboratories. *Yurdin* v. *Town Plan & Zoning Commission*, 145 Conn. 416, 419, 143 A.2d 639.

## II

It is fundamental that the change must be in harmony with and in conformity to a comprehensive plan as mandated by General Statutes § 8-2, under which the town originally adopted its zoning regulations.[2] The comprehensive plan is found in the zoning regulations themselves and the zoning map, which are part of the record before us. New-

---

[2] "Sec. 8-2. REGULATIONS. . . . Such regulations shall be made in accordance with a comprehensive plan and shall be designed to lessen congestion in the streets; to secure safety from fire, panic, flood and other dangers; to promote health and the general welfare; to provide adequate light and air; to prevent the overcrowding of land; to avoid undue concentration of population and to facilitate the adequate provision for transportation, water, sewerage, schools, parks and other public requirements. Such regulations shall be made with reasonable consideration as to the character of the district and its peculiar suitability for particular uses and with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout such municipality."

town is a small suburban town with an estimated population of under 14,000 people. It is situated a short distance north of Bridgeport and east of Danbury with access highways readily connecting Newtown to these cities. The zoning map indicates that there are only a few business or industrial districts, relatively small in size, scattered throughout the town. The change of zone is a municipal enactment by the local legislative body authorized to make such a change and is to be distinguished from the decision of a board of appeals granting a variance. *Allin* v. *Zoning Commission,* 150 Conn. 129, 133, 135, 186 A.2d 802. The amendment of zoning ordinances is a matter within the sound legislative discretion of the zoning commission, and, in the determination whether reclassification of a single area is arbitrary, unreasonable, illegal or in abuse of such discretion, each case must be considered on its own facts and circumstances. *Keeler* v. *Council Bluffs,* 246 Iowa 202, 208, 214, 66 N.W.2d 113; 101 C.J.S., Zoning, § 33; 62 C.J.S., Municipal Corporations, § 226 (12); 58 Am. Jur., Zoning, § 39 & Cum. Sup. 1968.

The 47.448 acres in question consist of undeveloped land at the intersection of interstate route 84 and Connecticut route 25 in the Hawleyville section of the town. The tract is bounded by highways except in the southwesterly corner of the property, where it adjoins privately owned land occupied by a motel and zoned as a B-2 business district, and except on the east where it adjoins land of Jablon and Sedor and the remaining Anderson property. Anderson owns a parcel of approximately ninety acres in which is included the rezoned tract in question. Buildings on the portion rezoned herein would be visible from existing residences west of Con-

necticut route 25 but probably not from the nearest residences on the east, which are at least 1800 to 2000 feet away, as found by the commission. The highways bounding the tract are interstate route 84 on the north, Connecticut route 25 on the west, and combined United States route 6 and Connecticut route 25 on the south. In its northwesterly corner the parcel abuts a full interchange at interstate route 84 with access to routes 6 and 25. There are some business uses, conforming as well as nonconforming, in the immediate vicinity, and there is a parcel of ninety acres across interstate route 84 to the north which is zoned as an M-1 industrial district.

In addition to the location of the property as described, among other considerations, the commission gave as the basis for its action the following: It viewed the site and did not consider it to be prime residential land. See *Petrillo* v. *Board of Zoning Appeals,* 147 Conn. 469, 471, 473, 162 A.2d 508. The highest and best use of the tract is for light industry, laboratory and office uses. There are at present only two expressway interchanges in Newtown, whereas there is ample undeveloped residential land elsewhere in town, and rezoning this tract should result in a minimum increase in traffic burden to local streets. The trend of industrial construction is to locate near expressway interchanges, and the construction of interstate route 84 with the access to Connecticut routes 25 and 6 resulted in a change in the area justifying such a new zonal classification. See *Ball* v. *Town Plan & Zoning Commission,* 146 Conn. 397, 400, 151 A.2d 327. Also there has been no residential construction in Newtown on land adjacent to interstate route 84 since its opening four and one-half years ago; residential construction ad-

jacent thereto, if any, is likely to be marginal in quality; the tract is served by electricity and high-pressure natural gas; and its topography is appropriate for low-density industrial use.

The record discloses that the commission also considered the application in the light of the general recommendations for industrial development and criteria for selection of industrial locations set forth in a plan of development for the town dated May 27, 1958, and prepared by Gates and Ford, architectural and planning associates, in consultation with the commission prior to the construction of interstate route 84. Technical Planning Associates, the planning consultant employed by the commission, recommended a change of the use of the tract to industrial, giving many of the same reasons adopted by the commission. The Newtown chamber of commerce favored the change, as did the Newtown industrial development advisory committee and an unusual number of residents of the town. The unusually complete record before us contains facts which support the reasons for the action taken by the commission.

Under the Newtown zoning regulations, an M-2A industrial district, among other uses, permits laboratories devoted to research, design and experimentation. Newtown Zoning Regs. § 1.5A (1958, as amended). Among other safeguards and restrictions imposed by the regulations, to preserve the tenor of the adjacent property, it is provided that the minimum lot size be six acres and that all buildings be set back at least 300 feet from an adjacent residential district. The maximum building coverage is limited to 25 percent, including principal and accessory buildings, and the total area occupied by buildings, parking areas and outdoor storage areas

cannot exceed 50 percent of the lot area. The maximum height of buildings is set at two stories or thirty feet. Id. § 2. In each case, it appears that an M-2A industrial district as it exists in the zoning regulations, if it is to be created, must be carved out of another already existing zone and requires a change of the zonal classification of a particular piece of property from another zone to permit its establishment in the M-2A industrial district classification. *DeMeo* v. *Zoning Commission,* 148 Conn. 68, 71, 73, 167 A.2d 454. Until the time when the present action was taken, no land had been classified in the established M-2A zone.

Such a classification, governing the locating of facilities envisioned in the regulations to enable Smith, Kline and French Laboratories to settle in Newtown, is a relatively new development in zoning and permits, within a rapidly growing suburban community, the location of buildings for light industry and office uses and those to be used principally as laboratory or research facilities in residential or semiresidential areas which are accessible to large urban areas. In accordance with that trend, it has been held that singling out a relatively small parcel of land for a use classification totally different from that of a surrounding area did not necessarily do violence to a comprehensive plan and did not constitute "spot" zoning. *Thomas* v. *Bedford,* 11 N.Y.2d 428, 435, 184 N.E.2d 285; see note, 98 A.L.R.2d 225.

Reasonable flexibility in zoning is demanded by the increased population and burgeoning needs of a community, manifested herein by the expressed need for small, carefully developed and protected industrial sites surrounded by safeguards and restrictions which will reasonably preserve, as much as

possible, the rural, residential character of the town and community in the face of encroaching business and industrial expansion and expressways and interchanges. *Malafronte* v. *Planning & Zoning Board,* 155 Conn. 205, 209, 210, 230 A.2d 606. Balancing the preservation of the status quo with the reasonable pressures for change due to the growth in population and the onslaught of business needs and community requirements is a function of zoning which must best be resolved by the duly authorized legislative municipal body through a logical development of its comprehensive plan.

The record of the proceedings before the commission fully supports the conclusion that the commission "was endeavoring to amend the zoning regulations to meet present and reasonably anticipated future conditions in a manner which study and planning indicated would best serve the welfare of the community as a whole." *Young* v. *Town Planning & Zoning Commission,* 151 Conn. 235, 244, 196 A.2d 427. The authority and responsibility of determining the course of development of the zoning needs and a reasoned expansion of the zoning regulations and the zoning map properly rest with the zoning commission, and, unless its action is clearly contrary to a rational development of the town's comprehensive plan, the courts will not interfere with these local legislative decisions.

### III

The hearing on the appeal in the trial court was concluded on May 17, 1967, during the March session of the court. Section 51-156 of the General Statutes, in effect at that time, provided for four sessions to be held annually "on the second Tuesdays of September, December, March and June." On June 8,

1967, however, the legislature amended § 51-156 and changed the dates for holding such sessions to "the first Tuesdays of September, January and April and the first Tuesday following July fourth." Section 51-29 of the General Statutes provides in part: "Any judge of . . . the court of common pleas, who has commenced the trial of any civil case, shall have power to continue such trial and render judgment after the expiration of the term or session of the court at which such trial was commenced; but such trial shall be ended and judgment rendered therein before the close of the next term or session." Judgment was rendered on September 8, 1967. The plaintiffs claim that the judgment is erroneous because it was not rendered, pursuant to the amended statute, before the end of the June session and before the beginning of the September session on September 5. The judgment was rendered after the first Tuesday but before the second Tuesday of September, which would have been before the end of the June session under the statute before it was amended. This cause of action was pending at the time of the effective date of the passage of the amendment to § 51-156, so that the portion of General Statutes § 1-1 concerning the construction of statutes which states that "[t]he passage . . . of an act shall not affect any action then pending" should, from considerations of good sense and justice, have application, especially since the statute as amended contains no specific provision or clear indication of legislative intent that the amendment should be applied retroactively. *Carvette* v. *Marion Power Shovel Co.*, 157 Conn. 92, 96, 249 A.2d 58; *Reese* v. *Reese,* 136 Conn. 191, 196, 70 A.2d 123.

There is no error.

In this opinion the other judges concurred.