ERNEST V. SPADA ET AL. *v.* PLANNING AND ZONING COMMISSION OF THE TOWN OF STRATFORD ET AL.

KING, C. J., ALCORN, HOUSE, COTTER and RYAN, Js.

Argued January 7—decided February 10, 1970

*Vincent M. Simko,* for the appellants (plaintiffs).

*Aaron B. Schless,* with whom were *Samuel T. Rost* and, on the brief, *Richard A. Silver,* for the appellee (defendant Valle's Steak House of Stratford, Inc.).

*Edward F. Stodolink,* for the appellee (named defendant).

COTTER, J. The defendant planning and zoning commission, after conducting a public hearing, granted an application for a change of zone and an application for approval of a lot location for the sale of alcoholic liquor under a restaurant permit as requested in the applications submitted by the defendant Valle's Steak House of Stratford, Inc., hereinafter referred to as Valle's. From a judgment of

the Court of Common Pleas dismissing the plaintiffs' appeal, the plaintiffs have taken an appeal to this court and assign as error certain conclusions of the trial court with regard to the granting of the application for a change of zone.

The defendant commission, at an executive session, amended the Stratford zoning regulations to change the zone of the property in question, comprising 4.62 acres of vacant land, from MB, or general industrial, to CA, or retail commercial, and thereafter approved the lot location for the sale of alcoholic liquor under a restaurant permit to be used in connection with a restaurant business which Valle's intends to conduct on the property. The zoning ordinance adopted May 8, 1965, by the town of Stratford divides the town into eight general zone classifications or districts beginning with a one-family residence zone and proceeding to the least restrictive zonal classification, which is a general industrial district designated as MB.[1] Valle's contracted for the purchase of the 4.62 acres of vacant land located near the western boundary of an area several hundred acres in size which is known as the Great Meadows. This area was zoned entirely MB, general industrial, and at the time of the public hearing in the present case was mostly vacant land. The property is within 100 feet of exit 30 of the Connecticut Turnpike and is between land occupied by large oil storage tanks owned by the Shell Oil Company on the west and land to the east upon which the town incinerator is maintained. Across the street from the lot in question there is a storage and maintenance depot of the state highway department. There

---

[1] "[Stratford Zoning Regs. (1965).] 2.3. More restrictive districts. A district is deemed to be more restrictive than any district appearing below it in the preceding list."

are no residences or schools nearby, and the nearest church is approximately one-half mile away. The Stratford zoning regulations permit the operation of a restaurant in an MB, general industrial district; Stratford Zoning Regs. § 11.1.1 (1965); but such a zone does not constitute a location which may be approved under the zoning regulations for the sale of alcoholic liquor under a restaurant permit. Stratford Zoning Regs. § 15.8 (1965).[2] The plaintiffs, who were represented at the public hearing on Valle's applications and who were heard in opposition to them, are proprietors of restaurants in Stratford, with the exception of Michael J. Zielski, who owns business property about one mile from the premises in question. Three of the plaintiffs are members of the Greater Bridgeport Full Permit Restaurant Association.

In the course of the presentation in support of the applications at the public hearing before the commission, a number of exhibits were introduced in addition to the testimony of witnesses. The record discloses that it was Valle's intention, if the applications were approved, to erect on the property in question an air-conditioned, all-electric, modern

[2] "15.8. Location in zoning districts. No building or lot shall hereafter be approved for the sale as packaged merchandise, for consumption on the premises or otherwise, of alcoholic liquor, wine, beer or ale, except such building or lot be located within a zoning district of the town in accordance with the following class of permit:

*Class:*
- A—Package store and druggist permits may be located in LB, CA, CNC, and CF districts.
- B—Hotel permits may be located in CA, CF, and LBB districts.
- C—Hotel beer permits may be located in CA, CF, and LBB districts.
- D—Restaurant permits may be located in CA, CF, and LBB districts.
- E—Tavern permits may be located in CA and CF districts.
- F—Club permits may be located in LB, CA, and CF districts."

building, together with a parking lot to accommodate 450 vehicles, which would cost in the neighborhood of $1,000,000; that the restaurant would feed approximately 1000 individuals at any one time; that the business would operate with a payroll of about $750,000 annually, employing 125–150 people; that there would be adequate facilities for luncheons, banquets, seminars and meetings catering to business and industrial firms; and that the contemplated restaurant operation would attract industrial and business firms to the area.

In approving the change of zone, the commission stated that this zonal reclassification would upgrade the property, which they considered was unique owing to its proximity to the town incinerator and the Shell oil tanks; that it was determined that the ninety feet remaining on the east of this property, adjoining the incinerator, is proposed for use as a sixty-foot road and a thirty-foot right of way for the railroad spur track leading into the Great Meadows area to the rear of this property; that negotiations are underway with the United Illuminating Company to relocate the existing substation on Lordship Boulevard to property in the rear of the incinerator; that the fifty-foot parcel to the west of this property is under option to the Shell Oil Company; that the town sanitary sewers can be made available to this property; and that the property in question had remained vacant for many years. In approving the location for a restaurant liquor permit, the commission felt that a facility of the type proposed would help develop the Great Meadows area; that it was needed in the town because it could accommodate large functions; that its location complies with the restrictions imposed as to proximity to a residential district, churches, schools, or premises frequented by

minors; and that the granting of such a permit was not detrimental to the public interest.

The gravamen of the plaintiffs' claim is that the change of zone was not in harmony with the comprehensive plan but constituted "spot zoning" and was legally impermissible. The approval of an amendment to a zoning regulation which affects a relatively small area within an area of several hundred acres does not necessarily constitute an illegal exercise of authority. The defendant commission has the legislative power to rezone or amend the regulations with respect to the use of such a parcel of land as long as the action taken by it is not arbitrary or unreasonable or in abuse of its broad discretion. The validity or invalidity of the change in zone depends on the circumstances involved in a particular case. *Jablon* v. *Town Planning & Zoning Commission,* 157 Conn. 434, 439, 254 A.2d 914; note, 51 A.L.R.2d 263, 272; 101 C.J.S., Zoning, § 91. One of the circumstances with which the commission, acting in its legislative capacity, should properly concern itself is the encouragement of the most appropriate uses of the land in the area having regard to its type, location and the nature of the use being made of the surrounding land. The requirements imposed by General Statutes § 8-2 do not deprive the commission of all discretion, nor do they militate against a change in a general zoning classification so long as the change approved is reasonable and serves the interest of the general community. *Lavitt* v. *Pierre,* 152 Conn. 66, 75, 203 A.2d 289; *Kutcher* v. *Town Planning Commission,* 138 Conn. 705, 710, 88 A.2d 538. Any change in zone necessarily affects the comprehensive plan. *Mott's Realty Corporation* v. *Town Plan & Zoning Commission,* 152 Conn. 535, 540, 209 A.2d 179. In the

present case, the comprehensive plan permitted a restaurant at the location involved without a change in zone. Stratford Zoning Regs. § 11.1.1 (1965).

The change of zone adopted by the commission cannot be said to be out of harmony with the comprehensive plan for the good of the community as a whole so as to lead to the unavoidable conclusion that the action of the defendant commission was invalid on the ground that it constituted spot zoning. *Metropolitan Homes, Inc.* v. *Town Plan & Zoning Commission,* 152 Conn. 7, 12, 202 A.2d 241; *Wade* v. *Town Plan & Zoning Commission,* 145 Conn. 592, 595, 596, 145 A.2d 597. It does not impose a greater burden or more onerous restrictions on the character or use of the surrounding property or disturb the tenor of the neighborhood. Ibid. This action of the commission bore a reasonable relationship to the comprehensive plan, which recognized the use of the land for restaurant purposes under either classification. Reference to the uses permitted in a general industrial district, printed in the footnote,[3] shows that they are less restrictive and more obnoxious than those uses which are allowed in a retail commercial classification, to which the lot in question

---

[3] "Section 11. General Industrial Districts, MB.

11.1.  Uses permitted.

11.1.1.  Any use permitted in a Light Industrial District, without the requirement of enclosure but subject to the provisions of section 10.2.

11.1.2.  Saw or planing mill.

11.1.3.  Blacksmith shop.

11.1.4.  Glass manufacture.

11.1.5.  Pulp, paper, cardboard or building board manufacture.

11.1.6.  Rag or bag cleaning establishments.

11.1.7.  Any use customarily accessory to a permitted use.

11.2.  Uses permitted in General Industrial Districts more than 500 feet from the boundary of a residence or commercial district.

11.2.1.  Manufacture and storage of such chemicals as shall be

was changed. The commission could have reasonably concluded that the change will improve and develop the area with the construction of facilities designed to benefit the town economically and attract desirable business and industry.

The courts must be cautious about disturbing the decisions of a local legislative zoning body familiar with the circumstances of community concern which are peculiarly within its knowledge when conditions show (1) that the change reasonably meets or anticipates the needs of the community, (2) that it encourages a desirable and appropriate use of the land and is not one which is hostile to the general plan of zoning for the town, and (3) that the change of classification bears some reasonable relation to the basic plan. *Winslow* v. *Zoning Board,* 143 Conn. 381, 390, 391, 122 A.2d 789. The upgrading of a zone to a more restrictive classification under circumstances which may be described as a beneficial and progressive development of the area is generally upheld. *Young* v. *Town Planning & Zoning Commission,* 151 Conn. 235, 245, 196 A.2d 427. The reasons given by the commission which are supported by the record warrant such action in the present case. As we have indicated above, there was evidence before the commission that the amendment to authorize the

declared by the town health officer and the town fire chief as not dangerous to the public health and safety, off the premises.

11.2.2. Blast furnaces, foundries, metal fabricating plants, rolling mills, boiler works and drop forges.

11.2.3. Manufacture of bricks, cement products, tile and terra cotta.

11.2.4. Bulk storage of petroleum products.

11.2.5. Manufacture and treatment of rubber products.

11.2.6. Public utility power plant.

11.2.7. Fish or meat smoking, curing or canning.

11.2.8. Any use determined by the commission to be similar to the above in character."

construction of the proposed restaurant would make the Great Meadows area more attractive by serving the area's need for such a restaurant and thus would benefit the community as a whole and that it would not create traffic congestion. In addition, there was no showing that the change would detrimentally affect any existing uses in the neighborhood. Cf. *Miller* v. *Town Planning Commission,* 142 Conn. 265, 113 A.2d 504 (where the challenged amendment would have allowed commercial uses to invade an established residential zone); see also 58 Am. Jur., Zoning, § 39. Under the circumstances it cannot be said that the action of the defendant commission constituted an attempt to accommodate an individual property owner without any concern for the interests of the community. *Wade* v. *Town Plan & Zoning Commission,* 145 Conn. 592, 595, 596, 145 A.2d 597. The claim of the plaintiffs that the master plan is indistinguishable from the comprehensive plan is without merit. The master plan, in its designation of appropriate uses for various areas in a town, is merely advisory. It does not control the zoning commission in its enactment of zoning regulations. *Dooley* v. *Town Plan & Zoning Commission,* 154 Conn. 470, 473, 226 A.2d 509.

The facts and circumstances were carefully considered by the commission and fairly and reasonably support the conclusion that the change of zone applied for would permit the orderly development of otherwise vacant land in an industrial zone in a suitable, appropriate and desirable manner in keeping with the spirit of the comprehensive plan of zoning in Stratford and would be for the general welfare of the community.

There is no error.

In this opinion the other judges concurred.