[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff appeals pursuant to § 8-30g of the General Statutes from the denial of his application for approval of 25 detached single family dwellings on 4.23 acres in the town of Stratford. Of the 25, six units will be restricted as affordable housing as that term is defined in § 8-30g(a)(B).[1] The application was presented in two parts. First, the applicant sought an amendment to the zoning regulations so as to create a new zone classification to be known as the "Housing Opportunity Development Zone" which would contain its own legislative standards and requirements. The second part of the application sought to reclassify the property from RS-1 and RS-3 to the new HODZ zone.
The existing zones permit single family detached development on forty thousand (RS-1) and ten thousand (RS-3) square foot parcels. In addition, the existing floating affordable housing regulations (§ 5.4) permit up to 4.25 units per forty thousand square feet of land area if the underlying zone is RS-3 and up to 1.25 units per forty thousand square feet if the underlying zone is RS-1. The record does not indicate the total potential density of the site either as presently zoned or if zoned affordable housing under § 5.4 because there is no breakdown of land area for each underlying zone.
The property is bounded on the south and west by the town highways, Chapel Street and Cut Spring Road, and on the north and east by a fully developed single family neighborhood situated partly in the RS-3 and RS-1 zones. It was noted from a view[2]
of the neighborhood that most if not all of the lots in the RS-1 zone were nonconforming as to area and setbacks. CT Page 493
 I. Aggrievement
Based on the testimony of Christopher Darren Thompson the court finds that the plaintiff is aggrieved by virtue of his uninterrupted status as a contract purchaser of the property from the date of application to and through the date of trial.Goldfeld v. Planning and Zoning Commission, 3 Conn. App. 72
(1986). Moreover, the plaintiff is "a person whose affordable housing application is [has been] denied." Under § 8-30g(b) this plaintiff is statutorily aggrieved and possesses the requisite standing. Pratts Corner Partnership v. Southington Planning andZoning Commission, 9 Conn. L. Rptr. 10 at 291 (1993).
 II Defendant's Reasons
Notwithstanding that this is an affordable housing appeal under § 8-30g the court is bound, in the course of its review, to apply traditional principles of zoning jurisprudence where appropriate.West Hartford Interfaith Coalition, Inc. v. Town Council,228 Conn. 498 (1994).
When a zoning commission has stated its reasons, the reviewing court ought only to determine whether the assigned grounds are pertinent to the considerations which the authority was required to apply, and whether they are reasonably supported by the record. First Hartford Realty Corporation v. Planning and ZoningCommission, 165 Conn. 533, 543 (1993). The action of the commission should be sustained if even one of the stated reasons is sufficient to support it. Zygmont v. Planning ZoningCommission, 152 Conn. 550, 553 (1965). The key to the application of this test is whether any one reason is pertinent to the considerations which the zoning authority was required to apply. Unlike in conventional zoning appeals, the considerations which the zoning authority is required to apply are not limited to §8-2. With the enactment of § 8-30g the legislature has created a new set of considerations which the zoning authority must apply in affordable housing cases.
The first of these considerations is found in § 8-30g(c)(1)(A) which, in shifting the burden of proof to the zoning authority, CT Page 494 requires that the decision and reasons cited for the decision be supported by sufficient evidence in the record." In Kaufman v.Danbury, supra our Supreme Court considered for the first time the meaning of the "sufficient evidence" requirement. In construing the term, the court rejected equating that standard with the "substantial evidence" standard that ordinarily applies to zoning decisions made in an administrative capacity. Instead, the court approved a more relaxed standard that historically has applied to legislative as opposed to administrative zoning decisions. Thus, under § 8-30g(c)(1)(A) this Commission's only burden is to show that "the record before the commission supports [ed] the decision reached." West Hartford Interfaith Coalition,Inc. v. Town Council, supra at 513; and that the commission did not act arbitrarily . . . illegally . . . or in abuse of its discretion." (Internal quotation marks omitted). ProtectHamden/North Haven from Excessive Traffic and Pollution, Inc. v.Planning and Zoning Commission, 220 Conn. 537, 543-544 (1991). Recently, in Christian Activities Council. Congregational v. TownCouncil, 249 Conn. 566, 583 (1999) our Supreme Court refortified the principle that traditional zoning concepts apply to all four subparts of § 8-30g(c)(1)(A) through (D). At the same time, the court extended the reach of the "sufficient evidence" requirement to apply not only to subpart (A) but to all subparts, (A) through (D). Thus initially, the scope of this court's review is to determine whether there is sufficient evidence in the record not only to support the articulated reasons but also to support the Commission's determinations made under subparts (B)(C) and (D).
In Christian Activities Council, Congregational the court further refined the "sufficient evidence" standard to require that a commission demonstrate that there is a "quantifiable probability of harm" that would afflict a substantial public interest which needs to be protected. Id. at 585. Although the court seems to have ruled that a record which reveals only apossibility rather than a probability of such harm would not be supported by sufficient evidence.[3] Id. at 595. This court believes that a fair reading of the entire majority opinion does not preclude a finding of sufficient evidence where thepossibility of harm is real and the magnitude of the harm is catastrophic. Fairfield 2000 Corporation v. Newtown Planning andZoning Commission, No. CV970578756S, Judicial District of Fairfield at Bridgeport, March 1999 (Mottolese, J.). The court will proceed to evaluate the defendant's action on the above basis. CT Page 495
In this case the defendant Commission has recited what the court believes breaks down to eighteen (18) separately identifiable reasons. The court concludes that none of these reasons is sufficient to support the commission's decision.Zygmont v. Planning Zoning Commission, supra.
These reasons lack support in the record on one of four grounds, viz: (1) the quantum of the evidence is insufficient; (2) the reason is not supported by evidence of a probability of harm or a possibility of catastrophe; (3) the harm anticipated will not effect a substantial public interest, (4) the concept of need is misunderstood. The court will consider each reason in the order in which they appear in Exhibit 36 entitled "Memorandum of Decision-Stratford Zoning Commission". (part of and adopted in minutes of 9/16/97)[4]
First Reason — Relation to Existing Zoning.
The essence of this reason seems to be that rather than create a new zonal classification with new implementing legislation the applicant should have worked within the existing zoning regulations by combining features of § 5-3, Residence apartments and § 5-4, Affordable Housing Development.
A similar situation was involved in Town Close Associates v.Planning and Zoning Commission, 42 Conn. App. 94 (1996). In that case the New Canaan Zoning Commission enacted legislation to allow affordable housing by special permit in the very zone in which the property was located. In denying the plaintiff's application to construct an affordable housing development pursuant to § 8-30g the Commission argued that because the property was already zoned for affordable housing, subject to special permit, it had thereby obviated the need to consider whether the public interests which it had identified as necessitating protection clearly outweighed the need for affordable housing under § 8-30g(c)(1)(C) (formerly (3). Similarly here, the Commission seems to assert that because it already has on its books legislation which allows apartments and affordable housing in the RS-1 and RS-3 zones by special case[5] it may advance those regulations in preference to the applicant's. Clearly the Commission made no overt attempt to address the inquiry mandated by subpart (C) of the statute. The Commission improperly failed even to identify the nature of the public interest which it sought to protect by requiring the applicant to "work within" the existing regulations. CT Page 496
The Commission's position is not unlike the position taken by the defendant in National Associated Properties v. North BranfordPlanning and Zoning Commission, 9CSCR 17 (November 17, 1993), aff'd, 37 Conn. App. 788 (1995). In that case the zoning commission denied an application for affordable housing on the grounds that the affordable development "conflicted with the Commission's own affordable housing regulations." There, the Commission insisted that the developer comply with its newly adopted set of affordable housing regulations. In response, this court held that the preservation and promotion of its own affordable housing regulations did not constitute a substantial public interest which clearly outweighed the need for affordable housing when strict compliance with those regulations resulted in rejection of the application. In Wisniowski v. Berlin Planningand Zoning Commission, 37 Conn. App. 303, 312 (1995) our Appellate Court held that § 8-30g does not contemplate a denial of an affordable housing application on the grounds that it does not comply with the underlying zoning of the area. The facts in Wisniowski were similar to those here in that in both cases the deviations or variations were not in a use but rather in the size and bulk of structures and in lot areas. The court held that "the rigorous standard of § 8-30g dictates that the Commission cannot deny an application on broad grounds such as noncompliance with zoning." Id. at 314.
As in National Associated Properties, supra, this court continues to adhere to the principle that a zoning authority has no substantial public interest in holding out for compliance with its own affordable housing regulations when strict compliance with those regulations would result in rejection of the affordable housing proposal.
Second Reason — Special Case Requirements/Health. Safety andWelfare Provision.
As stated above, the plaintiff's application as in two parts, viz: (1) to enact a new set of regulations so as to create an HODZ zone, and (2) to rezone from RS-1 and RS-3 to HODZ. This reason denies the application because it failed to include a provision requiring that the development obtain approval from the Commission as a special case. First, the Commission misconstrues the application as one for multi-family housing when in fact it proposes clustered, single family, detached housing. Second, as stated in "First Reason" above, under 8-30g a zoning commission CT Page 497 is not permitted to deny an application because it fails to provide for a review and permit procedure which the commission deems appropriate.
In a similar setting our Supreme Court ruled as follows: "We conclude, therefore, that § 8-30g does not independently require an affordable housing developer to submit to the Commission, at the time of his initial application in connection with an affordable housing development, any more detailed `plans' than an applicant who requests a zone change for a purpose other than affordable housing. The zoning Commission undoubtedly is entitled to enact regulations requiring all zone change applicants, including applicants for zone changes in connection with affordable housing developments, at the time their applications are filed, to submit information that the commission will need to fulfill its duties. In addition, during the hearings on an application, a zoning commission undoubtedly is entitled within the constraints imposed by its regulations, to require an applicant to provide whatever additional information the commission needs to fulfill its duties. The provision of § 8-30g
require nothing more." Kaufman v. Zoning Commission, supra, at 141. By the same reasoning this defendant may not deny the plaintiff's application because it does not provide for special case review.
Third Reason — Spot Zoning.
In Kaufman, supra, the court rejected the zoning authority's argument that imposition by the zoning commission of conditions designed to assure that the proposed housing would remain affordable would violate the rule requiring uniformity of regulation. Kaufman v. Zoning Commission, supra, at 147. InWisniowski v. Planning and Zoning Commission, supra, at 315, our Appellate Court held that "the requirement of uniformity of § 8-2
`does general zoning requirement as long as the exception is reasonable and for the general community benefit rather than for the benefit of single landowner.'" Lavitt v. Pierre,152 Conn. 66, 75, 203 A.2d 289 (1964). Clearly, affordable housing legislation is for the benefit of the entire community, as well as for that of the state. West Hartford Coalition, Inc. v. TownCouncil, supra, 228 Conn. 511.
The very same reasoning applies to the principle of spot zoning. "Simply defined, `spot zoning' is the reclassification of a small area of land in such a manner as to disturb the tenor of the surrounding neighborhood." Pierrepont v. Zoning Commission,154 Conn. 463, 469, 226 A.2d 659; Guerriero v. Galasso,144 Conn. 600, 607, 136 A.2d 497. For the plaintiffs to prevail on this ground, two elements must be satisfied before spot zoning can be said to exist. Loh v. Town Plan and Zoning Commission,161 Conn. 32, 38, 282 A.2d 894. First, the zone change must concern a small area of land. Ibid.; Guerriero v. Galasso supra; Winslow v.Zoning Board, supra; Eden v. Town Plan and Zoning Commission,139 Conn. 59, 63, 64 89 A.2d 746. The area of the land in this case being 6.5 acres the first test can be met. Second, the change `must be out of harmony with the comprehensive plan for zoning adopted to serve the needs of the community as a whole.'"Morningside Association v. Planning and Zoning Board,162 Conn. 154, 161 (1972).
In this case, the area qualifies as small and thus satisfies the first element. The plaintiff's proposal, however, does not satisfy the second element. The development of single family, detached residences, though clustered in order to avoid meeting setback and lot area requirements of the underlying zones, and though producing a substantially greater density than that found in the neighborhood, does not disturb the tenor of the surrounding neighborhood which is already developed, as single family on lots which are legally nonconforming as to area and yards. So, on the basis of the factual record before the Commission, the Commission was incorrect in characterizing this project as spot zoning.
Furthermore, this court holds as a matter of law that an affordable housing development which is to be located in an existing residential neighborhood cannot be deemed to constitute spot zoning because affordable housing is for the benefit of the entire community as well as for that of the State and is not primarily designed for the benefit of the developer. Wisniowskiv. Planning and Zoning Commission, supra at 315.
Fourth Reason — Landscaping Standards/Open Space.
The Commission has failed to demonstrate how lack of landscaping standards constitutes a substantial public interest, especially when the Commission was fully at liberty to require a landscaping plan either pursuant to its general planning authority or by adding to the proposed legislation a requirement for landscape site plan review. Moreover, the commission could have granted approval of the application conditioned upon presentation of an acceptable landscape plan. Kaufman v. ZoningCommission, supra at 141-148.
Fifth Reason — Density Limits.
This reason will be considered with the reason which appears on page three of the commission's memorandum of decision entitled "Proposed Density." Both reasons make the same claim that the proposed density of 5.9 units per acre is six times greater than that which is allowed under existing zoning. Certainly, with reference with the RS-1 zone (1 acre) this is substantially correct. But it is not correct with reference to the RS-3 zone (10,000 square feet) as to which it is 4.4 times the density and only three times greater than that which would be allowed under Stratford's own affordable housing regulations (§ 5.4). These reasons do not specifically pinpoint the public interest which the commission seeks to protect by limiting density. If this were a conventional zoning appeal, controlling density would clearly be a permissible public interest which the commission may properly address pursuant to G.S. § 8-2. "Issues of density are usually fairly debatable." Lurie v. Planning and ZoningCommission, 168 Conn. 295, 309 (1971). At the same time, since 1984 (P.A. 84-263) zoning commissions have been required to adopt regulations to "encourage the development of housing opportunities for all citizens of the municipality." In order to qualify as a legitimate basis for denial of an affordable housing application, density must represent a substantial public interest in "health, safety or other matters which the commission may legally consider." Section 8-30g (c)(2)[6], National AssociatedProperties v. Planning and Zoning Commission, 9 CSCR at 11. The record is totally devoid of any evidence to support the notion that density of population is a public interest which should preclude an affordable housing development. There is nothing in the record to show that the 25 units proposed would overcrowd the land or otherwise jeopardize the public interest.
The only disclosed basis for this reason is that the applicant failed to provide economic justification for his proposal. That is, the developer did not prove that he needs to sell 25 units to make the development economically feasible. The issue may be stated as follows: Is a zoning authority permitted to deny an application for an affordable housing development because a for-profit developer has not provided economic data to prove that the number of units proposed are necessary in order for him to make a reasonable profit? CT Page 500
In West Hartford Interfaith Coalition, Inc. v. Town Council, supra, at 524, our Supreme Court held that to require a not-for-profit developer to furnish proof that it had obtained all funding approvals for the financing of assisted affordable housing prior to obtaining zoning authorization would thwart the purpose of § 8-30g.
The Commission's denial on these grounds seems to be drawn from the doctrine long observed in traditional rezoning cases that ordinarily a zoning commission is under no obligation to down zone unless it appears that the property cannot be usedeconomically under one or more of the other zonal classifications available under existing regulations. Zygmont v. Planning andZoning Commission, supra at 555. Whatever place the principle of economic justification has in the jurisprudence of conventional zoning legislation, it has no place in the application and interpretation of § 8-30g.
Turning first to the language of the statute, there is no provision which deals directly with this issue. However, both subsections (b) and (d) recognize the possibility that a developer may be aggrieved by a decision of a zoning authority which places restrictions on an approval "which have a substantial adverse impact on the viability of the development or the degree of affordability of the affordable dwelling units specified in subparagraph (B) of subdivision (1) subsection (a) of this section." "In construing § 8-30g we must start with the language employed by the legislature. United Illuminating Co. v.Groppo, 220 Conn. 749, 756, 601 A.2d 1005 (1992). Generally, `when the language of the statute is plain an unambiguous we need look no further than the words themselves because we assume that the language expresses the legislature's intent.' AmericanUniversal Ins. Co. v. DelGreco, 205 Conn. 178, 193, 530 A.2d 171
(1987). Further, we must interpret a statute according to its plain and ordinary meaning. Mazur v. Blum, 184 Conn. 116, 118,441 A.2d 65 (1981)." West Hartford Interfaith Coalition, Inc. v.Town Council, supra, at 508.
It is apparent that among the restrictions affecting economic viability might be one which reduces the number of units applied for (density) to a number which renders the development no longer economically feasible. It is perfectly conceivable that in an appropriate case a zoning authority might find on the basis of sufficient evidence in the record, that to permit construction of CT Page 501 the exact number of units applied for would probably have a harmful effect on a substantial public interest, such as a water supply or on site sewage disposal. The applicant would then have a right of appeal as an be aggrieved person on the grounds that the reduction substantially adversely impacted the viability of the development.
Applying the above principles of statutory construction the court concludes that the legislature did not intend to permit zoning authorities to deny an application for an affordable housing development because the applicant failed to justify the economic need to build the precise number of units for which he applied.
As the court states in West Hartford Interfaith Coalition,Inc., supra, at 511 our review of "the statute's legislative history reveals that the key purpose of § 8-30g is to encourage and facilitate the much need development of affordable housing throughout the state. The defendant's proposed interpretation of the statute would undermine this very important objective." Obviously, if a zoning authority were to have the authority to limit its approval of an affordable housing application to the number of housing units necessary to make the project barely economically viable, for-profit developers would be seriously discouraged from making application, thus defeating the purpose of the statute.
Moreover, there is other mischief associated with the exercise of such authority. In the absence of a legislatively expressed statutory standard of economic viability, each zoning authority would be free to set its own standard resulting in lack of uniformity from municipality to municipality and ensuing lack of certainty in the administration of § 8-30g.
Sixth Reason — Setbacks and Height.
Other than the commission's own value preference, there is nothing in the record to support the need to adhere to the setbacks and height requirements prescribed in § 5.4 (affordable housing regulations) or those of the RS-1 district. The reason, as expressed in the language chosen, fails to identify any specific public interest which the Commission wished to protect nor does it indicate how or why this public interest will be endangered, e.g., exposure to fire, loss of light, air, noise, pollution infiltration, etc. It defies the court's comprehension CT Page 502 precisely how this condition could constitute a substantial public interest which is entitled to protection.
Seventh Reason — Determination of Affordability.
The Commission has denied the application because the applicant has not "documented affordability" and apparently thereby has failed to persuade the Commission that the application was legitimately made for an affordable housing development as that term is defined in § 8-30g.
A similar attempt was made by the zoning authority in WestHartford Interfaith Coalition, Inc. v. Town Counsel, supra, at 524-525. In that case the court held that a not-for-profit developer was not required to provide documentation to the authority that it would be receiving the necessary financial assistance to make the development affordable. Likewise the court approved a practice whereby the applicant "indicated its intent
(emphasis in original) to use a . . . declaration containing restrictions and covenants which run with the land." No documentation of affordability was or is necessary.
Eighth Reason — Standards for Zone Change Approval. Sect. 26.12(Applicant's proposal).
It is difficult to discern what public interest the Commission seeks to protect by denying the application for failure to provide information concerning surrounding uses, traffic levels and physical characteristics of the property. The record reveals that the commission had this information before it anyway. The record is replete with references to the character of the neighborhood and the topographical features of the land. The plaintiff submitted a traffic study authored by Highway Traffic Consultants (Exhibit 19). But even if this information were absent from the record, these are items which lend themselves readily to submission at a subsequent administrative event such as site plan review.
Ninth Reason — Standards for Site Development Sect 26.13.1
As with the eighth reason, subpart (c)(1)(D) authorizes the commission to make reasonable changes to the legislation as proposed. Instead of utilizing this trivial grounds for denial the Commission easily could have amended the legislation to include the information it claims was absent. While it may serve CT Page 503 the public interest to mandate these "considerations", the Commission points to no general or specific harm to any substantial public interest which the absence of these considerations are likely to cause.
Tenth Reason — Traffic.
The applicant's evidence on traffic impact is condemned by the Commission as incomplete and implausible. The lack of reliable technical data on the issue of traffic impact cannot under any circumstances constitute a threat of harm to a substantial public interest unless the Commission explicitly identifies both the specific harm and the public interest. Discrediting an expert without linking the deficiency to a specific public interest does not satisfy the sufficient evidence standard. The court cannot be left to speculate as to either. Moreover, there is no reasonable basis in the record for the Commission to have inferred the presence of harm or the probability that traffic safety would be adversely affected or that there would be congestion in the streets if the application were granted. Generalized fears are similar to "concerns" which do not attain the level of a "quantifiable probability." Christian Activities Council,Congregational, supra, at 605; Kaufman v. Zoning Commission, supra, at 154-162.
Eleventh Reason — Town Plan.
This reason denies the application because it is inconsistent with the Stratford Land Use Plan, the town plan of development. The Commission cites § 6.4.3 of the plan which states that the Commission should give careful consideration to the density and scale of a proposed development in determining its impact on surrounding areas. Such a statement merely reflects the statutory duty of all zoning commissions in evaluating every application for a zone change. Again, there is nothing in the record to support the claim that the density of this development probably will have an adverse impact on the surrounding neighborhood.
On the other hand, the plan of development, which was adopted in 1993, set a goal of adding 436 affordable housing units by the year 1998 and 480 such units by the year 2001. (Record, item 9, pg. 43-44). In section 7.2.2 of the land use plan the Commission states the following. "Where possible the town should promote the use of its new affordable housing regulations." At page 186 the Commission states "the town [should] explore other creative CT Page 504 methods for encouraging affordable housing by the private sector." These expressions are every bit as forceful as the Planning Commission's words on the need to protect surrounding neighborhoods. Moreover, the use of precatory language "where possible should promote . . . and . . . should explore" contemplates the receipt of affordable housing applications other than those made pursuant to § 5.4 and that these applications should be accorded the same level of legitimacy as § 5.4 applications. Such clear recognition of other options for affordable housing contradicts the planning commission's recommendation that the application be denied because it is not in the accordance with § 5.4. The court notes parenthetically that the Commission failed to comply fully with the requirement of § 8-3a(b) of the General Statutes in that the Commission's report does not contain findings on the consistency of the application with that portion of the plan that relates to affordable housing (Ex. 26). While the plaintiff has not seen fit to attack the report on this basis the court would expect that when a planning commission evaluates a proposal for an affordable development it would give at least equal time in its study and report to the zoning commission to that particular segment of the plan of development which sets numerical goals for affordable housing units in the community. (Sections 3.3.8, 3.3.9 and 3.4.1).
Twelfth Reason — Public Utilities.
This reason calls into question the sufficiency of the evidence in the record with respect to future harm to the municipality because of sewage system overload to be produced by this development. The town engineer, John Casey, admitted that this development would not overload the municipal sewage system by itself but that there is a possibility of future overload if the area of the neighborhood affected by the off site drainage were developed to similar density. (Exhibit #27). Such a concern does not even rise to the level of a possibility of harm because the same can be said with regard to every use which incrementally burdens the municipal infrastructure. Moreover, Mr. Casey readily acknowledged that "hard data on the existing capacity of the system does not exist." So, not only is there insufficient evidence to support this reason but the commission fails to explain how the town could have a substantial public interest in protecting its sewage system against the need for future expansion or modification, or, for that matter, how that public interest could out weigh the need for affordable housing. CT Page 505
Thirteenth Reason — Statutory Goals of § 8-2.
Here, the Commission specifically cites overcrowding of land, inadequate light and air, noise pollution, the character of the neighborhood, high density and the most appropriate use of the land. Each of these precepts have been addressed above and do not merit repetition. Like its sister agency, the Planning Commission, it has failed in its effort to address the "overall goals of § 8-2", i.e., focus on the "encourage[ment] . . . of housing opportunities" and "the promot[ion] of housing choice and economic diversity in housing including housing for both low and moderate income households." In fact, its conclusion that the development "will decrease the quality of life in Stratford" can only be construed as a blanket disapproval of any and all affordable housing applications which do not conform to the town's own affordable housing regulations. More disturbing, however, is that it reflects a belief that the introduction of six affordable housing units in a highly developed residential neighborhood could have an effect not just on the neighborhood but on the quality of life in the whole town. Such an exaggerated attitude is indicative of a fear which this court recognized inNichols v. Killingly Planning and Zoning Commission, CV94-0540477S Superior Court, Hartford/New Britain J. D. at Hartford, June 5, 1995 at p. 12. "The fear of an influx of families of low and moderate income into an established neighborhood of single family homes tends to alarm the citizens and promotes embellished statements of probable harm to the point where they frequently become pretextual." Indeed, the legislature has already determined that an affordable development should not, solely by its nature, be considered harmful to property values.Pratts Corner Limited Partnership v. Southington Planning andZoning Commission, 9 Conn. L. Rptr. 121, 129 (1993). Quality of life in a municipality is not a recognizable public interest not just because it is not found in § 8-2 or § 8.30g but because it is too vague and amorphous a concept to lend itself to objective measurement.
Fourteenth Reason — Application Deficiency.
A minor administrative noncompliance such as the failure to file an A-2 survey is not such a public interest requirement as to warrant the denial of an affordable housing application. Such a document can be mandated at anytime prior to final approval or can be made a condition of approval. Kaufman v. Planning andCT Page 506Zoning Commission, supra at 147.
Fifteenth Reason — Environmental Issues.
Since Christian Activities Council, Congregational v. TownCouncil, supra, the preservation of open space has been recognized as a substantial public interest which a municipality is entitled to protect, at least under the particular circumstances of that case. Whether other "environmental issues" can qualify on the same basis will have to be answered on a case by case basis. The only environmental issue identified by the commission is a concern over "whether the surface water drainage system will work given the lack of soils and high bedrock."
The record reveals that Jeff Samas, the town environmental conservation officer, identified certain potential adverse impacts. He expressed "an erosion concern over the soil that covers the bedrock" (emphasis added) and called for a detailed soils investigation in order to determine the entire infiltration of the drainage galleries. Likewise the town engineer, Mr. Casey called for more engineering design information. William McCann, the conservation administrator stated as to drainage runoff, "the property itself is not going to have a problem. They probably will not see any recognizable flooding problems or runoff problems. Its the adjacent properties that we're concerned about" (Emphasis added).
Each of the town officials who testified analyzed the harm to down stream property owners as a potential and a concern and expressed the need for additional technical engineering data. None of these officials indicated that an effective surface water drainage system could not be designed. The Commission could properly have insisted upon this as a condition of approval. Its absence is not grounds for denial of the application.
While protection against flooding is clearly a protectable public interest, there is no evidence of either the nature or extent of the harm to which the down stream owners would be exposed or that such harm is at all probable. Kaufman v. ZoningCommission, supra; Christian Activities Council, Congregationalv. Town Council, supra.
Sixteenth Reason — Parking.
Curiously, the Commission did not find that the number of CT Page 507 parking spaces was insufficient. It found rather that the driveway spaces did not satisfy the requirement of the zoning regulations. Section 12.5 and 12.5.1 of the Stratford zoning regulations require one space per dwelling unit exclusive of driveway necessary for access. While it is true that the site plan shows parking in the driveways, the Commission easily could have required as a condition of approval that the parking spaces be relocated, especially since § 12.2 permits location of parking within 200 feet from the use for which it serves. This reason is so trivial that the court is left with the impression that it is pretextual. Besides, the Commission has identified no public interest which it seeks to protect by relieving the residents of the development of the inconvenience of having to move parked cars to allow garage cars in or out.
Seventeenth Reason — Recreation.
The Commission complains that the recreation area shown on the site plan is too far away from the houses. This reason is factually without a basis since it couldn't possibly be closer. (See Exhibit 32. Site layout and grading plan). This reason is flagrantly pretextual.
Eighteenth Reason — Housing Needs/Affordability.
 (A)
Within this part of the commission's discussion is the inference (not a finding) that the development would adversely affect surrounding property values. Protection of property values has long been an acknowledged purpose of zoning. Karen v. EastHaddam, 146 Conn. 720, 729 (1959). Therefore, in a given case, a zoning authority may have a legitimate public interest in protecting property values. In this case the Commission has failed to state the basis for this belief and the record is consistent with that omission. The apparent basis for the inference is the discrediting of the report of the applicant's real estate appraiser. The commission seems to require the applicant to prove that the development will not adversely affect surrounding property values and appears to operate on the presumption that this development, by its nature, will have such an effect, therefore requiring the applicant to rebut such a presumption. As noted above, no such presumption exists in the law. CT Page 508
 (B)
The Commission cited studies and reports which showed that in the early to mid nineteen nineties many houses and condominiums in Stratford had sold in an affordable range of under $130,000. Based on this evidence and with full knowledge that these units were neither restricted nor assisted as those terms are used in 8-30g, the Commission, nevertheless, proceeded to determine that "at this point in time, land costs and housing values are low enough to accommodate affordable housing". Plainly and simply, as a matter of law, the Commission was not authorized to conclude that the recent history of sales in Stratford at prices which meet statutory affordability standards obviated the need for this affordable housing development even though these sales did not satisfy the definition of affordable housing under § 8-30g.
In West Hartford Interfaith Coalition, Inc., supra, at 520, the defendant argued that "the trial court should have considered evidence of existing housing that did not meet the statutory definition of affordable housing but was nevertheless "affordable." In particular, the defendant argues that the trial court should have considered statistical evidence demonstrating that at the time of the plaintiff's hearing before the defendant, there were at least 60 residential units listed on the market in West Hartford for less than $147,500 and 37 housing units listed within an asking price below $99,000. Additionally, the defendant argues that the trial court should have considered evidence that the defendant's membership had personal knowledge of various efforts on the part of West Hartford to promote affordable housing in the town". In disagreeing with that argument the court stated ". . . there is no support in the statute or its legislative history for the defendant's position. Section 8.30g(a) explicitly limits the definition of `affordable housing' to `assisted housing' or deed restricted housing. Further, 
8.30g(f) and (g) provide specific exemptions from the statute's appeal procedure. Because the `evidence' proffered by the defendant does not comport with the statutory definition of "affordable housing" it satisfies neither statutory exemption. Consequently, when weighing the need for affordable housing, the trial court correctly refused to consider the defendant's evidence of low cost housing and of private efforts to encourage its development."
In 1992, the Connecticut Department of Housing fixed the percentage of statutorily eligible affordable housing units in CT Page 509 Stratford at 7.8% of its total housing stock. In 1996 that percentage decreased to 7.32%. It is obvious that Stratford is regressing in its efforts to increase its affordable housing availability. Not only has Stratford failed to add a single unit in its stated goal of adding 436 units by 1998 but it has actually lost 80 units. This statistic alone undermines the sincerity of Stratford's commitment to affordable housing and totally vitiates its articulated finding that "there is no clear evidence on the record that demonstrates the economic need for development at the high density proposed".
The Commission's effort to weigh the harm to the public interest against the need for affordable housing fails in two respects. First, there is no evidence of any quantifiable probability of harm to any public interest. Second, the Commission has deliberately miscalculated the existence of need by (a) including ineligible housing units, and (b) ignoring its own regression in the field. Thus, this court holds that this Commission's exercise in balancing need with protection against harm was illusory and of no force and effect, quite unlike that performed by the zoning authority in Christian ActivitiesCouncil, Congregational v. Town Council, supra. In that case the town of Glastonbury had met 55% of its affordable housing goal since 1989, there was evidence of approval of other affordable housing developments in the community and other sites within the community had been identified by the town as appropriate for affordable housing.
Notwithstanding the Commission's invitation to the developer to submit a modified proposal addressing the Commission's reasons for denial (§ 8.30g(d)) the developer declined. It is obvious that the developer was unwilling to scale down the size of his proposal to satisfy the commission's reasons for denial. That is his privilege.
Because the defendant Commission has not satisfied its burden under § 8-30g(c)(1)(A)(B) and (C) for the reasons stated above, the decision of the Commission is reversed and the appeal is sustained.
BY THE COURT,
Mottolese, Judge